133 N.W.2d 537 (1965)
STATE of Minnesota, Respondent,
v.
Lester L. RICHTER, Appellant.
No. 39225.
Supreme Court of Minnesota.
February 19, 1965.
Vincent P. Courtney, St. Paul, for appellant.
Walter F. Mondale, Atty. Gen., J. Earl Cudd, Sol. Gen., St. Paul, V. W. Lundquist, County Atty., Willmar, for respondent.
OTIS, Justice.
Defendant seeks to vacate a 1951 conviction for grand larceny, claiming that an unconstitutional *538 search and seizure induced his plea of guilty. Thus, we are confronted again with the issue of whether Mapp v. State of Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081, 84 A.L.R.2d 933 (1961), rehearing denied, 368 U.S. 871, 82 S.Ct. 23, 7 L.Ed.2d 72, has retroactive application.[1]
The trial court denied defendant's petition without a hearing and without appointing counsel, stating in effect that Mapp had no bearing where no evidence, tainted or otherwise, was introduced. The appeal is from that order.
Since there is no settled case, we are concerned only with the narrow issue of whether defendant has made a prima facie showing which requires a full hearing on his petition.
1. Defendant's recitation of the facts in his original presentence examination, supplemented by his petitions and affidavits in this court, indicates that on Sunday, May 27, 1951, at 9:30 in the evening, he and an accomplice drove to New London, Minnesota, for the express purpose of burglarizing the Holm Brothers Hardware. They arrived at their destination at 11:30 p.m., forced a back window, and entered the store, where they remained for about 2 hours. They used an acetylene torch which they found on the premises to burn a hole in a vault from which they took $100 in cash. In addition, they stole $150 from a cash register, an outboard motor, various suitcases, a vacuum cleaner, a mixmaster, an electric fan, tools, a toaster, a shotgun, a quantity of ammunition, a wrecking bar, a clock, and a .30-.30 rifle. Defendant returned to Minneapolis without then being apprehended. About a month later, on June 25, 1951, at 10:30 in the evening, defendant had been parked for three-quarters of an hour on the west side of Lake Minnetonka next to a filling station when a patrol car arrived, apparently as the result of the filling station owner's complaint that a window on his premises had just been broken. The curiosity of the police was further aroused by the fact defendant had a lock and key repair set in the back of his car. He was directed to accompany the officers to the Hennepin County courthouse on the technical charge of having an improper driver's license on his person. On the way to the sheriff's office, the police secured a record check which showed defendant had a number of felony convictions. He was taken to the sheriff's office and required to wait for 45 minutes while the officers took his room key and without a warrant entered his apartment and discovered the merchandise which had been stolen from the Holm Brothers Hardware at New London. Upon the officers' return to headquarters, defendant was booked for burglary. On July 5, 1951, he was arraigned on a charge of grand larceny in the first degree for the theft from the Holm Brothers Hardware of the .30-.30 rifle, valued at $54.15. Counsel was appointed on his behalf, and after an interrogation by the court which established that defendant had conferred with counsel, understood his rights, and the consequences of his plea, he entered a plea of guilty. He was thereupon arraigned upon three prior felony convictions and was sentenced to the State Prison for a term not exceeding 25 years.[2]
In an affidavit dated December 19, 1963, defendant alleges that prior to his arraignment he was advised the articles stolen from the Holm Brothers Hardware were found in his apartment and, believing that they would be used against him, he concluded he had no alternative but to plead guilty, *539 although he knew of no other evidence linking him to the crime.
Assuming that this recitation of the events which followed defendant's apprehension were to be established by appropriate testimony, we would have little difficulty in holding that the search and seizure were in flagrant violation of U.S.Const. Amends. IV and XIV and Minn.Const. art. 1, § 10. Agnello v. United States, 269 U.S. 20, 46 S.Ct. 4, 70 L.Ed. 145.
2. The authorities are divided on the question of whether a plea of guilty renders moot a consideration of the status of evidence obtained by an unconstitutional search and seizure. Support for the conclusion of the trial court may be found in decisions of the Ohio court and the Tenth Circuit United States Court of Appeals.[3] However, in an analogous situation the United States Supreme Court has clearly indicated that unconstitutionally obtained confessions may furnish grounds for vacating improvidently entered pleas of guilty.[4] This court in a direct appeal has recently recognized a prisoner's right to withdraw a plea of guilty induced by illegally obtained evidence, in State v. Clifford, 267 Minn. 554, 126 N.W.2d 258, where we remanded the proceedings for a determination of whether an involuntary confession had prompted the plea. We therefore hold that if he were permitted to establish that his plea was induced by "a genuine misapprehension of his legal position and his constitutional rights" defendant would not be foreclosed from withdrawing his plea of guilty merely because the illegally obtained evidence was not in fact used against him. 267 Minn. 555, 126 N.W.2d 259.
3. So much has been written on the retroactivity of Mapp we hesitate to further burden the bench and bar with protracted speculation on how that question will ultimately be resolved. The United States Supreme Court has granted certiorari in at least one case dealing with the problem.[5]
Since at the time of his conviction the evidence seized in defendant's apartment was admissible under both Federal and state decisions construing the Constitution, Mapp affords him no relief unless we hold that it is not only the law today but was also the law in 1951. We find this a difficult philosophical hurdle to leap. In 1949, the United States Supreme Court squarely held in Wolf v. People of State of Colorado, 338 U.S. 25, 33, 69 S.Ct. 1359, 1364, 93 L.Ed. 1782, 1788, that "in a prosecution in a State court for a State crime the Fourteenth Amendment does not forbid the admission of evidence obtained by an unreasonable search and seizure." The court adhered to the Wolf rule in Irvine v. People of State of California, 347 U.S. 128, 136, 74 S.Ct. 381, 385, 98 L.Ed. 561, 571, rehearing denied, 347 U.S. 931, 74 S.Ct. 527, 98 L.Ed. 1083, where the majority reaffirmed its position in the following language:
"* * * The disciplinary or educational effect of the court's releasing the defendant for police misbehavior is so indirect as to be no more than a mild deterrent at best. Some discretion is still left to the states in criminal cases, for which they are largely responsible, and we think it is for them to determine which rule best serves them." (Italics supplied.)
There having been no constitutional impediment to the admissibility of illegally *540 obtained evidence, this court elected to condone its use, looking to other means for enforcing the constitutional rights thus ignored. State v. Siporen, 215 Minn. 438, 441, 10 N.W.2d 353, 354.
Mapp v. State of Ohio, supra, was decided in June 1961 and held that the constitutional right against illegal search and seizure, recognized in Wolf as applicable to the states through the Fourth and Fourteenth Amendments, at long last required implementation by the exclusion of such evidence in state court proceedings. Wolf was expressly overruled. There have been a number of decisions dealing with the application of the Mapp rule to litigation tried but not yet concluded when the Mapp opinion was rendered.[6] We need not concern ourselves at this time with the precise stage of the appeal at which Mapp must be given recognition and effect. We are directing our attention only to collateral proceedings where the time to appeal has long since elapsed.
It has been pointed out that Mapp itself applied retroactively the newly fashioned exclusionary rule governing state courts, and to that extent its announced purpose of deterring unlawful police action was not served. The United States Supreme Court in Mapp did not, however, find that the rule in the Wolf case was wrong for the conditions which existed in 1949 when it was decided. In effect, the Mapp opinion merely held that the course of time had proved the necessity for more drastic measures to implement what had long been the constitutional right against invasion of privacy. The court clearly indicated in Mapp that it had given the states an opportunity to adopt their own methods of enforcement and that these remedies had proved futile. It concluded (367 U.S. 660, 81 S.Ct. 1694, 6 L.Ed.2d 1093, 84 A.L.R.2d 945) by holding that it could no longer permit the right to remain an empty promise, "revocable at the whim of any police officer who, in the name of law enforcement itself, chooses to suspend its enjoyment."
As we read the Mapp opinion, it is designed to give effect to what was expressed in Elkins v. United States, 364 U.S. 206, 217, 80 S.Ct. 1437, 1444, 4 L.Ed.2d 1669, 1677, where the court said with respect to the exclusionary rule:
"* * * The rule is calculated to prevent, not to repair. Its purpose is to deter  to compel respect for the constitutional guaranty in the only effectively available way  by removing the incentive to disregard it."
Where the court merely adopts a procedural device to enforce an existing right and does not give birth to a right hitherto undiscovered, we do not feel compelled to adopt the views expressed by Blackstone in his Commentaries concerning the effect of overruling previous decisions[7] (1 Blackstone, Commentaries, Introduction, § 3, I):
"* * * For it is an established rule to abide by former precedents, where the same points come again in litigation; as well to keep the scale of justice even and steady, and not liable to waver with every new judge's opinion; as also because the law in that case being solemnly declared and determined, what before was uncertain, and perhaps indifferent, is now become a permanent rule, which it is not in the breast of any subsequent judge to alter or vary from, according to his private *541 sentiments: he being sworn to determine, not according to his own private judgment, but according to the known laws and customs of the land; not delegated to pronounce a new law, but to maintain and expound the old one. Yet this rule admits of exception, where the former determination is most evidently contrary to reason; much more if it be clearly contrary to the divine law. But even in such cases the subsequent judges do not pretend to make a new law, but to vindicate the old one from misrepresentation. For if it be found that the former decision is manifestly absurd or unjust, it is declared, not that such a sentence was bad law, but that it was not law; that is, that it is not the established custom of the realm, as has been erroneously determined." (Italics supplied.)
In short, we do not subscribe to the philosophy that Mapp was the law in 1951, notwithstanding Blackstone and dictum to the contrary in our own jurisdiction. Hoven v. McCarthy Brothers Co., 163 Minn. 339, 204 N.W. 29. Rather, the application of the Mapp rule to the instant case must be determined by a consideration of broad public policy.
Courts and commentators who favor the retroactive application of Mapp base their conclusions on what they have determined to be the intent of the United States Supreme Court to announce a constitutional privilege which cannot be waived by a defendant who does not know of its existence.[8]
Two of the leading cases supporting the view that Mapp is retroactive are Hall v. Warden (4 Cir.) 313 F.2d 483 (1963), certiorari denied sub nom. Peppersack v. Hall, 374 U.S. 809, 83 S.Ct. 1693, 10 L.Ed.2d 1032, and People of State of Cal. v. Hurst (9 Cir.) 325 F.2d 891 (1963). Because it was a capital case and a divided court, the force of the Hall opinion is somewhat diluted. Nevertheless, the court held that Mapp was dealing not with a mere rule of evidence, but a constitutional right which existed at the time Wolf was decided, even if it was not enforced by Wolf. The court stressed the fact that the Mapp opinion was not expressly limited to prospective application, and the court of appeals was reluctant to permit the death penalty to be imposed by the fortuitous circumstance of a conviction at a date prior to the Supreme Court's decision in the Mapp case. It finally pointed out that the rule newly enunciated in Griffin v. People of State of Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891, granting indigents a transcript, was applied retroactively in Eskridge v. Washington State Bd. of Prison Terms and Parole, 357 U.S. 214, 78 S.Ct. 1061, 2 L. Ed.2d 1269.
The Ninth Circuit Court of Appeals came to the same conclusion in People of State of Cal. v. Hurst (9 Cir.) 325 F.2d 891. Conceding that the philosophy of the Mapp rule was to deter, that court nevertheless felt it was a right which should be accorded equally to all who invoked it. It was not impressed with the suggestion that a retroactive application of Mapp would result in a flood of litigation, believing that (325 F.2d 896) "prisoners as well as tort claimants have a right to crowd court dockets." Since no Supreme Court precedent prevented retroactive application of a decision overruling a previous holding, the Ninth Circuit court stated that the prisoner was entitled to the benefit of any doubt in this connection. To the same effect is United States ex rel. Holloway v. Reincke (D.Conn.) 229 F.Supp. 132.
*542 By far the greater weight of authority in both state and Federal courts has refused to apply Mapp retroactively for reasons of public policy.[9] The present Chief Justice of the California court, in a concurring opinion in In re Harris, 56 Cal.2d 879, 885, 16 Cal.Rptr. 889, 892, 366 P.2d 305, 308, persuasively delineated the distinction between giving a retroactive effect to principles asserted in cases such as Griffin v. People of State of Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891, and Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799, and those announced in Mapp.
The rule in Mapp did not strike at a process which denied fundamental fairness in determining defendant's guilt or innocence. On the contrary, evidence illegally seized may well have probative value, as indeed it did in the instant case. Its exclusion is prompted purely by a concern for deterring unconstitutional behavior by law enforcement officers. The denial of a basic constitutional right, such as the right to counsel or the right to a transcript, directly affects the defendant's opportunity to assert his innocence. We agree that the retroactive effect given Griffin and Gideon does not compel a similar treatment of Mapp.[10]
We subscribe also to the reasoning of Gaitan v. United States (10 Cir.) 317 F. 2d 494 (1963), that a change in constitutional interpretation is not essentially different from a change in the Constitution itself. In the instant case the offense for which defendant was convicted is no longer a felony, what was grand larceny now being defined as the theft of property having a value of at least $100. Yet, in our opinion, there is as little logic in retrying the defendant because Wolf has been overruled as there is in releasing him because the offense described in the 1951 information is now only a misdemeanor.
A recent and thoroughly considered opinion on this subject is United States ex rel. Angelet v. Fay (2 Cir.) 333 F.2d 12 (1964), certiorari granted, 379 U. S. 815, 85 S.Ct. 126, 13 L.Ed.2d 28. The court there reached a conclusion with which we are in accord, that defendant's failure to object at a time when it would have been futile did not constitute a waiver of his rights.[11] However, in refusing to hold Mapp retroactive, the court reiterated the generally accepted view that Mapp was designed principally to deter police misconduct, that the unconstitutionally seized evidence was not untrustworthy, that the trial was not tainted by fundamental unfairness, and that to hold otherwise would be an intolerable burden on judicial administration and violate the wholesome principles of stare decisis and res judicata. Basically, however, the court was of the opinion that where guilt beyond a reasonable doubt has been established by reliable *543 evidence, the public has an overriding interest in preventing the defendant from being turned loose on the community when the witnesses and the evidence may no longer be available to reconvict him. By the same reasoning, we do not feel moved to adopt a rule which can not now have any deterrent effect, but would result only in granting a belated trial to a prisoner who has confessed in open court the details of the offense with which he was charged. The conclusion we reach was suggested in State ex rel. Beltowski v. Tahash, 266 Minn. 182, 123 N.W.2d 207, certiorari denied sub nom. Beltowski v. Tahash, 375 U.S. 947, 84 S.Ct. 358, 11 L. Ed.2d 278, although there we found an insufficient prima facie showing of illegal search and seizure to justify a hearing on the applicability of Mapp at the trial court level. The order denying defendant's petition is therefore affirmed.
Affirmed.
NOTES
[1] State v. Harris, 265 Minn. 260, 270, 121 N.W.2d 327, 334; State v. Emerson, 266 Minn. 217, 220, 123 N.W.2d 382, 385; State ex rel. Beltowski v. Tahash, 266 Minn. 182, 184, 123 N.W.2d 207, 208, certiorari denied sub nom. Beltowski v. Tahash, 375 U.S. 947, 84 S.Ct. 358, 11 L.Ed.2d 278.
[2] The sentence could have been for a maximum term of life under Minn.St. 1961, § 610.29, (since superseded by Minn.St. 609.155) but ironically the information alleges what is now only an offense for which the maximum term is 90 days in jail. Minn.St. 609.52, subd. 3(4).
[3] Villasino v. Maxwell, 174 Ohio St. 483, 190 N.E.2d 265; Churchill v. Haskins, 176 Ohio St. 183, 198 N.E.2d 656; Mahler v. United States (10 Cir.) 333 F.2d 472, rehearing denied July 27, 1964.
[4] Com. of Pennsylvania ex rel. Herman v. Claudy, 350 U.S. 116, 122, 76 S.Ct. 223, 226, 100 L.Ed. 126, 132. See, also, State v. Fahy, 149 Conn. 577, 183 A.2d 256 (1962); Fahy v. State of Connecticut, 375 U.S. 85, 84 S.Ct. 229, 11 L.Ed.2d 171; United States ex rel. Vaughn v. LaVallee (2 Cir.) 318 F.2d 499.
[5] United States ex rel. Linkletter v. Walker (5 Cir.) 323 F.2d 11 (1963), certiorari granted, 377 U.S. 930, 84 S.Ct. 1340, 12 L.Ed.2d 295.
[6] Fahy v. State of Connecticut, 375 U.S. 85, 84 S.Ct. 229, 11 L.Ed.2d 171; State v. Smith, 37 N.J. 481, 181 A.2d 761, certiorari denied, 374 U.S. 835, 83 S.Ct. 1879, 10 L.Ed.2d 1055; People v. Loria, 10 N.Y.2d 368, 370, 223 N.Y.S.2d 462, 464, 179 N.E.2d 478, 480; Commonwealth v. Mancini, 198 Pa.Super. 642, 184 A.2d 279; United States ex rel. Mancini v. Rundle (E.D.Pa.) 219 F.Supp. 549; Peters v. Dillon (D.Colo.) 227 F.Supp. 487; People v. Carafas, 11 N.Y.2d 891, 227 N.Y.S.2d 926, 182 N.E.2d 413; United States ex rel. Carafas v. LaVallee (2 Cir.) 334 F.2d 331; People v. West, 12 N.Y.2d 1090, 240 N.Y.S.2d 159, 190 N.E.2d 532; United States ex rel. West v. LaVallee (2 Cir.) 335 F.2d 230.
[7] Notes and Comments, 71 Yale L.J. 907.
[8] See, Redlich, Constitutional Law, 36 N.Y.U.L.Rev. 1417, 1420; Torcia and King, The Mirage of Retroactivity and Changing Constitutional Concepts, 66 Dickinson L.Rev. 269; 25 Ga.Bar J. 238; United States ex rel. Holloway v. Reincke (D.Conn.) 229 F.Supp. 132, 138; United States ex rel. Carafas v. LaVallee (2 Cir.) 334 F.2d 331, 333; United States ex rel. West v. LaVallee (2 Cir.) 335 F.2d 230; Walker v. Peppersack (4 Cir.) 316 F.2d 119, 127. Contra, People v. Friola, 11 N.Y.2d 157, 227 N.Y.S. 2d 423, 182 N.E.2d 100.
[9] People v. Muller, 11 N.Y.2d 154, 227 N.Y.S.2d 421, 182 N.E.2d 99; State v. Smith, 37 N.J. 481, 181 A.2d 761; People v. Figueroa, Co.Ct., 220 N.Y.S.2d 131; People v. Friola, 11 N.Y.2d 157, 227 N.Y.S.2d 423, 182 N.E.2d 100; Commonwealth ex rel. Wilson v. Rundle, 412 Pa. 109, 194 A.2d 143; Dirring, Petitioner, 344 Mass. 522, 183 N.E.2d 300; Sisk v. Lane (7 Cir.) 331 F.2d 235; Bender, The Retroactive Effect of an Overruling Constitutional Decision: Mapp v. Ohio, 110 U. of Pa.L.Rev. 650, 676; Meador, Habeas Corpus and the "Retroactivity" Illusion, 50 Va.L.Rev. 1115; Note, 16 Rutgers L.Rev. 587; Traynor, Mapp v. Ohio at Large in the Fifty States, 11 Duke L.J. 319, 340; Weinstein, Local Responsibility for Improvement of Search and Seizure Practices, 34 Rocky Mt.L.Rev. 150, 172.
[10] To the same effect is United States ex rel. Linkletter v. Walker (5 Cir.) 323 F.2d 11, certiorari granted, 377 U.S. 930, 84 S.Ct. 1340, 12 L.Ed.2d 295.
[11] See, also, Walker v. Peppersack (4 Cir.) 316 F.2d 119, 127 (1963); United States ex rel. Holloway v. Reincke (D. Conn.) 229 F.Supp. 132, 139; Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461; United States ex rel. Carafas v. LaVallee (2 Cir.), 334 F.2d 331, 333; United States ex rel. West v. LaVallee (2 Cir.), 335 F.2d 230.