STATE of Minnesota, Respondent,

v.

Lavell Charles HARDY, petitioner, Appellant.

No. C6-96-1927.

Supreme Court of Minnesota.

April 9, 1998.

John M. Stuart, State Public Defender, Rochelle R. Winn, Assistant State Public Defender, Minneapolis, for Appellant.

Hubert H. Humphrey III, Attorney General, St. Paul, Susan Gaertner, Ramsey County Attorney, Darrell C. Hill, Assistant County Attorney, St. Paul, for Respondent.

## OPINION

BLATZ, Chief Justice.

This criminal case raises several issues under the Fourth Amendment to the United States Constitution and article I, section 10 of the Minnesota Constitution. Specifically, this case presents the issue of whether a police officer's request that a suspect open his mouth constitutes a search and if so, whether there was probable cause to support the search under the facts of this case.

The appellant, Lavell Charles Hardy, appeals from his conviction in the Ramsey County District Court for a controlled substance crime in the third degree: possession of cocaine with the intent to sell in violation of Minn.Stat. §§ 152.01, subd. 15(a) and 152.023, subd. 1(1) and 3(a) (1994). The conviction resulted from an incident which occurred on March 23, 1995. On that date, Hardy fled from police after they requested that he open his mouth. Hardy subsequently spit 2.66 grams of crack cocaine out of his mouth after he was tackled and maced by police. Hardy argues that the request to open his mouth constituted an illegal search and, therefore, the cocaine should be suppressed. The trial court rejected this argument, finding that the police had sufficient justification for their conduct. The court of appeals affirmed Hardy's conviction, holding that the police officer's instruction to Hardy to open his mouth only constituted a seizure for which the police needed a reasonable articulable suspicion and did not constitute a search for which probable cause was required.

The facts of this case are not in dispute. On March 23, 1995, police officers Scott Payne and John Wuorinen were patrolling the Frogtown area of St. Paul in a marked patrol car. At approximately 11:00 p.m., they spotted Hardy and his friend, Gerald Fleming, walking eastbound on Aurora Avenue. The two men had just left the Badger Bar on University Avenue and Grotto Street and were headed to 733 Aurora Avenue to meet Fleming's friend, Angie. Officer Wuorinen noticed that the men kept looking back at the police car as they walked and he considered this nervous behavior which might be indicative of drug trafficking. The officers then followed a few car-lengths behind the men as they walked along the sidewalk. The men continued to walk at a normal pace until they had traveled a few feet past 733 Aurora Avenue, at which point Fleming put his hand out and stopped Hardy and motioned for Hardy to follow him to the house at that address. The two men then turned around and walked back to the house, which was completely dark, and climbed the steps leading to it. This sudden change in direction and the fact that the house was darkened further piqued the police officers' suspicions. The officers stopped the squad car in front of a neighboring house and watched as Hardy climbed the stairs leading to the front door and pulled on the storm door to gain access. Fleming remained at the bottom of the steps. After seeing that Hardy was not gaining entry into the home, the police, concerned about the possibility that the men were attempting a burglary, backed their squad car in front of 733 Aurora Avenue and got out to investigate.

The two uniformed officers approached the men and Officer Payne asked them what they were doing. Fleming responded that they were going to visit a friend. Officer

Wuorinen then asked both men who they were going to see. Hardy did not respond to these questions verbally, but nodded his head in agreement with Fleming's answers. At that point, Officer Wuorinen suspected that Hardy might be concealing narcotics in his mouth. Officer Wuorinen testified that there was a great deal of street-level drug trafficking in the area. Also, he testified that it was common for individuals to conceal narcotics in their mouths and for such individuals to respond to police questions with body language rather than verbal communication. For this reason, the officers made it a practice when approaching a suspicious individual to attempt to strike up conversation to see if the person had something in his or her mouth.

When the officers again asked Hardy whom he was going to see, Hardy clenched his mouth and tightened his neck muscles as if he were trying to swallow something. Officer Wuorinen, who was standing at the bottom of the stairs, then asked Hardy to open his mouth. Hardy responded by running down the stairs. Officer Wuorinen was able to grab him and a struggle ensued. Both officers repeatedly commanded Hardy to stop fighting. Hardy continued to struggle and Officer Wuorinen struck him with a flashlight on his left shoulder. Officer Wuorinen also commanded Hardy to spit out whatever was in his mouth. As Hardy continued to struggle, Officer Payne pulled out his mace and sprayed Hardy in the face. Within seconds, Hardy started coughing and spitting out 13 crack cocaine pellets wrapped in plastic. The officers then handcuffed Hardy and searched him. Officer Wuorinen recovered the crack pellets from the ground and later, at the police station, informed Hardy that he was under arrest for possession of a controlled substance.

■ When reviewing a challenge under the Fourth Amendment of the United States Constitution on undisputed facts, the reviewing court may independently analyze the facts to determine whether evidence needs to be suppressed as a matter of law. *State v. Othoudt*, 482 N.W.2d 218, 221 (Minn.1992). The Fourth Amendment and Art. I, sect. 10 of the Minnesota Constitution protect the right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures. A search occurs whenever government agents intrude upon an area where a person has a reasonable expectation of privacy. *See California v. Ciraolo*, 476 U.S. 207, 211, 106 S.Ct. 1809, 1811–12, 90 L.Ed.2d 210 (1986). In *Schmerber v. California*, the Supreme Court recognized that individuals have a legitimate privacy interest protecting "searches involving intrusions beyond the body's surface." 384 U.S. 757, 769–70, 86 S.Ct. 1826, 1835, 16 L.Ed.2d 908 (1966).

The court of appeals reasoned that the officer's request that Hardy open his mouth did not constitute a search because the request was no more intrusive than an ordinary passerby's engaging Hardy in conversation and telling him to speak more clearly. The court noted that there was no evidence that the officer meant for Hardy to submit to a closeup visual inspection.

However, Hardy points out that the police officer, unlike a passerby, had an investigatory purpose in asking Hardy to open his mouth—to look for the presence of drugs. This purpose is evidenced by Officer Wuorinen's testimony that he and other officers often engage suspects in conversation "to see if they have an object in their mouth." Therefore, Hardy argues that this intrusion was no mere request, but an attempt to search his mouth. Hardy also argues that the intrusiveness of the request was demonstrated by the manner in which it was carried out; the police first directed him to open his mouth, then forced him to do so. His assertion that the attempted search continued unabated up to the police officers' use of force is supported by the fact that just prior to macing Hardy, the police ordered him to spit out whatever was in his mouth.

In contrast, the state argues that Officer Wuorinen's request did not constitute an actual search for which probable cause was required. Rather, the state contends that the request that Hardy open his mouth was a reasonable extension of the officers' investigation once they noticed that Hardy appeared to have an object in his mouth and after they saw Hardy tighten his neck mus-

cles as if to swallow it. *See United States v. Mendenhall,* 446 U.S. 544, 554, 100 S.Ct. 1870, 1877, 64 L.Ed.2d 497 (1980) (holding that police officers may talk to citizens and investigate suspicious behavior without probable cause). The state argues that Hardy's actions were openly observable and that police officers cannot be expected to ignore actions that could have been observed by any member of the public. *See California v. Greenwood,* 486 U.S. 35, 41, 108 S.Ct. 1625, 1629, 100 L.Ed.2d 30 (1988). The state further contends that the request itself was not accompanied by physical force or intimidation.

The issue of whether a police officer's order or request for an individual to open his or her mouth constitutes a search of the body is one of first impression in Minnesota. Several states have addressed this issue and concluded that similar demands or requests constituted searches in circumstances similar to the present case. *See, e.g., Hawkins v. State,* 853 S.W.2d 598, 602 (Tex.Ct.App.1993) (holding that police officer's actions constituted a search when he placed his cupped hand out in front of driver detained on *Terry* stop); *People v. Harper,* 237 Ill.App.3d 202, 177 Ill.Dec. 334, 337, 603 N.E.2d 115, 118 (1992) (concluding that search occurred when police officers ordered suspect to open his mouth, shined flashlights into his mouth, and ordered him to spit out the packet they observed).

We hold that Officer Wuorinen's request that Hardy open his mouth constituted a sufficient intrusion upon Hardy's privacy interests to qualify as a search protected by the Fourth Amendment. The request went beyond mere investigation. When Hardy refused to answer investigatory questions, the police officer sought to confirm his suspicion that Hardy might be in possession of drugs through his own observation of Hardy's mouth. His request, made while physically blocking the steps from which Hardy attempted to exit the porch, constituted a show of authority designed to obtain compliance and, therefore, was similar to cases noted above in which directives to suspects to open their mouths or "spit it out" constituted searches of the suspects' persons.

Because the request for Hardy to open his mouth constituted a warrantless search, we must determine whether it was supported by one of the exceptions to the warrant requirement. Warrantless searches "are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *Katz v. United States,* 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967). One of these exceptions is a search incident to arrest. *State v. Dickerson,* 481 N.W.2d 840, 845 (Minn.1992). "An arresting officer may search the arrestee and the area within the immediate control of the arrestee in order to prevent destruction of evidence or to remove any weapons that the arrestee might use to resist arrest or effect escape." *State v. Wynne,* 552 N.W.2d 218, 221 (Minn.1996). This search may precede arrest as long as the results of the search are not necessary to establish probable cause for the arrest. *Id.*

Probable cause is based on "whether the officers in the particular circumstances, conditioned by their own observations and information and guided by the whole of their police experience, reasonably could have believed that a crime had been committed by the person to be arrested." *State v. Olson,* 436 N.W.2d 92, 94 (Minn. 1989), *aff'd,* 495 U.S. 91, 110 S.Ct. 1684, 109 L.Ed.2d 85 (1990). The reasonableness of the officer's actions is an objective inquiry; it does not depend on the officer's subjective frame of mind. *State v. Moorman,* 505 N.W.2d 593, 598 (Minn.1993). Mere suspicion is insufficient to establish probable cause. *State v. Lohnes,* 344 N.W.2d 605, 612 (Minn.1984).

In establishing probable cause to believe that a suspect is in possession of drugs, this court has required more than location in a high crime neighborhood and the presence of an unidentified item on the suspect's person. For example, in *Dickerson,* this court held that police permissibly stopped a suspect and frisked him for weapons after he was observed to leave a known crack house and exhibit evasive behavior. 481 N.W.2d at 840. However, these circumstances, combined with the discovery of a small, unidentified lump in the suspect's pocket during the frisk,

were insufficient to support an extensive search of the suspect's person. In determining that probable cause for the search was lacking, this court noted that there was no visual sighting of contraband, no effort by the defendant to hide anything, and no accomplice in possession of contraband. *Id.* at 844, 846. In contrast, in *State v. Ludtke,* this court upheld the search of a suspect's body following a *Terry* frisk which uncovered a plastic bag containing an unidentified substance. 306 N.W.2d 111, 113 (Minn.1981). In that case, the police performed the weapons frisk after the suspect and his companion were found to possess marijuana and the suspect reached into the back seat of the car in which he was a passenger in a furtive manner. *Id.* at 112. The frisk revealed a knife in the suspect's pants pocket, in addition to the plastic bag. *Id.* The *Dickerson* court distinguished the *Ludtke* case, stating that, under those circumstances, "the presence of a plastic bag containing *anything* on Ludtke's body gave police probable cause to believe that Ludtke was in possession of a controlled substance." *Dickerson,* 481 N.W.2d at 846 (emphasis in original).

■ The facts relied upon by the police to perform the search in the instant case are analogous to the facts we held insufficient to support probable cause in *Dickerson.* The police officer based his search of Hardy's mouth on the following facts: the neighborhood was a high-crime area where drug dealing was prevalent; Hardy did not answer the officers' questions verbally and instead, nodded his head and appeared to swallow something; and, in the police officers' experience, individuals who conceal drugs in their mouths do not respond verbally to police questioning. As in *Dickerson,* the police did not have any specific evidence which would indicate what, if anything, Hardy possessed in his mouth. The police did not see any drugs nor did they see Hardy place anything in his mouth. Likewise, the police did not see Hardy exchanging parcels or leaving a known drug haven. Without more information, the substance in Hardy's mouth could just as likely have been gum, chewing tobacco, or food as it could have been drugs.

■ Irrespective of this lack of information, the state argues that the pre-arrest search was necessary to prevent Hardy from consuming the cocaine and destroying the evidence. However, the possibility that Hardy might ingest whatever substance was in his mouth did not eliminate the need for police to have probable cause to believe that the substance was evidence of a crime before they could search for it. The facts of this case are insufficient to support probable cause to believe that Hardy possessed controlled substances in his mouth.

■ Finally, because the request for Hardy to open his mouth constituted a search for which there was no probable cause, the fruits of that search must be excluded from evidence. *Wong Sun v. United States,* 371 U.S. 471, 487–88, 83 S.Ct. 407, 417, 9 L.Ed.2d 441 (1963); *State v. Bale,* 267 N.W.2d 730, 732–33 (Minn.1978). Evidence abandoned as a result of an illegal search or seizure constitutes the fruit of the search. *In re Welfare of E.D.J.,* 502 N.W.2d 779, 783 (Minn.1993). Hardy ran in reaction to the illegal search attempted by the police. Only as a result of this flight did the police come to use physical force and subdue Hardy with mace, which caused him to expel the contents of his mouth. Moreover, the police continued their illegal search when they demanded that Hardy spit out whatever was in his mouth prior to spraying mace in his face. The illegal search caused the events which eventually led to Hardy's "abandonment" of the evidence. Therefore, the evidence is excluded.

■ We reiterate that the primary purpose of the exclusionary rule is to deter police misconduct. *State v. Warndahl,* 436 N.W.2d 770, 776 (Minn.1989). By excluding the evidence under the circumstances of this case, we seek to eliminate the incentive for police officers who have detained a person on a *Terry* stop to overstep the limits of the stop. Additionally, we seek to eliminate the temptation for a police officer with less than probable cause to attempt an illegal search.

Without the drug evidence abandoned by Hardy, there was insufficient evidence to support the controlled substance conviction.

Therefore, we reverse the court of appeals and vacate Hardy's conviction.

Reversed and conviction vacated.