595 N.W.2d 214 (1999)
STATE of Minnesota, Respondent,
v.
Quincy Jeffrey MARTIN, Appellant.
No. C6-99-145.
Court of Appeals of Minnesota.
June 8, 1999.
Review Denied August 25, 1999.
*215 Mike Hatch, Attorney General, St. Paul and Amy Klobuchar, Hennepin County Attorney, Linda M. Freyer, Assistant County Attorney, Minneapolis, for respondent.
John M. Stuart, State Public Defender, Steven P. Russett, Assistant Public Defender, Minneapolis, for appellant.
Considered and decided by HALBROOKS, Presiding Judge, DAVIES, Judge, and PETERSON, Judge.

OPINION
PETERSON, Judge.
In this appeal from an order revoking his probation, appellant Quincy Jeffrey Martin argues that the district court erred by admitting evidence obtained during an illegal search. We affirm.

FACTS
Martin pleaded guilty to third-degree possession of a controlled substance. He was sentenced to 34 months in prison, but execution of the sentence was stayed, and Martin was placed on probation for three years. A condition of his probation was that he not possess any nonprescription drug.
A year later, Martin was arrested for careless driving. During a search incident to the arrest, police found crack cocaine in Martin's pocket, and he was charged with fifth-degree possession of a controlled substance. Martin moved to suppress the cocaine. He contended that his arrest was illegal because careless driving is a misdemeanor offense, and the police should have *216 issued him a citation rather than arresting him. Minn. R.Crim. P. 6.01, subd. 1(1)(a), requires an officer to issue a citation for a misdemeanor offense unless it reasonably appears to the officer that (1) an arrest or detention is necessary to prevent bodily harm or further criminal activity, or (2) there is a substantial likelihood that the accused will fail to respond to the citation. The district court concluded that because neither of these conditions was present when Martin was arrested, the arrest was illegal. Because the arrest was illegal, the court suppressed the cocaine and dismissed the fifth-degree possession charge.
This appeal is from a later probation revocation proceeding, at which the district court determined that even though the cocaine had been suppressed in the criminal proceeding, it was admissible in the probation revocation proceeding to prove that Martin violated a condition of his probation. Following a contested hearing, the court found that Martin violated his probation by possessing cocaine. The court revoked Martin's probation and committed him to 34 months in prison.

ISSUE
Was the cocaine inadmissible in Martin's probation revocation proceeding because it was obtained during an illegal search?

ANALYSIS
The United States Supreme Court recently held in Pennsylvania Bd. of Probation & Parole v. Scott, 524 U.S. 357, 118 S.Ct. 2014, 141 L.Ed.2d 344 (1998), that the Fourth Amendment exclusionary rule, which generally excludes from criminal trials evidence obtained in violation of a defendant's Fourth Amendment rights, does not apply in parole revocation hearings. In Scott, the court explained that
the State's use of evidence obtained in violation of the Fourth Amendment does not itself violate the Constitution. Rather, a Fourth Amendment violation is fully accomplished by the illegal search or seizure, and no exclusion of evidence from a judicial or administrative proceeding can cure the invasion of the defendant's rights which he has already suffered. The exclusionary rule is instead a judicially created means of deterring illegal searches and seizures. As such, the rule does not proscribe the introduction of illegally seized evidence in all proceedings or against all persons, but applies only in contexts where its remedial objectives are thought most efficaciously served. Moreover, because the rule is prudential rather than constitutionally mandated, we have held it to be applicable only where its deterrence benefits outweigh its substantial social costs.
Scott, 118 S.Ct. at 2019 (citations & quotations omitted).
The court went on to compare the costs of excluding reliable, probative evidence in parole revocation proceedings to the deterrence benefits to be gained from exclusion and concluded:
A federal requirement that parole boards apply the exclusionary rule, which is itself a "grudgingly taken medicant," would severely disrupt the traditionally informal, administrative process of parole revocation. The marginal deterrence of unreasonable searches and seizures is insufficient to justify such an intrusion. We therefore hold that parole boards are not required by federal law to exclude evidence obtained in violation of the Fourth Amendment.
Id. at 2022 (quoting United States v. Janis, 428 U.S. 433, 96 S.Ct. 3021, 3032, n. 29, 49 L.Ed.2d 1046 (1976)).
Although Scott applies expressly to state parole revocation hearings, there is in this regard no material distinction between the probation and parole systems. State v. Earnest, 293 N.W.2d 365, 368 n. 2 (1980); see also Gagnon v. Scarpelli, 411 U.S. 778, 782 n. 3, 93 S.Ct. 1756, 1759 n. 3, 36 L.Ed.2d 656 (1973) (despite minor differences, probation revocation is constitutionally indistinguishable from parole revocation). *217 Therefore, we see no reason why the reasoning in Scott should not also apply to state probation revocation hearings. But Martin contends that even if Scott were extended to state probation revocation hearings, and federal law did not require state courts in those hearings to exclude evidence obtained in violation of the Fourth Amendment, the illegally obtained evidence should be excluded under Article I, Section 10, of the Minnesota Constitution.
Minnesota may afford greater protection under its state constitution than is required by the federal constitution. State v. Gray, 413 N.W.2d 107, 111 (Minn.1987). The separate state constitution will be of little value if a reviewing court automatically follows a United States Supreme Court decision interpreting a provision in the federal constitution that is identical with a provision in the state constitution. State v. Hamm, 423 N.W.2d 379, 382 (Minn.1988). But a reviewing court should not "cavalierly construe [the state] constitution more expansively than the United States Supreme Court has construed the federal constitution." Gray, 413 N.W.2d at 111. Minnesota courts will not apply more stringent state standards, absent a compelling reason to do so. Federal Distillers, Inc. v. State, 304 Minn. 28, 40, 229 N.W.2d 144, 155 (1975).
The text of Article I, Section 10, of the Minnesota Constitution is substantively identical with the text of the Fourth Amendment to the United States Constitution; the only differences between the two provisions are stylistic. Compare Minn. Const. art. I, § 10 with U.S. Const. amend. IV. In spite of the identical language, Martin argues that, unlike the federal exclusionary rule, the exclusionary rule based on article I, section 10, of the state constitution applies to probation revocation hearings because the sources and purposes of the rules are different. Martin contends that the federal exclusionary rule is a judicially created remedy designed to safeguard Fourth Amendment rights through its deterrent effect. In contrast, Martin contends that state courts applying state constitutions have held that exclusion of unlawfully obtained evidence is a constitutionally required remedy designed to protect and vindicate the personal rights of the aggrieved party. As an example, Martin cites State v. Davis, 313 Or. 246, 834 P.2d 1008, 1012 (1992), where the Oregon Supreme Court stated:
The right guaranteed by article I, section 9, [of the Oregon Constitution] is the right to be "secure * * * against unreasonable search, or seizure." If that constitutional right to be "secure" against impermissible government conduct is to be effective, it must mean that the government cannot obtain a criminal conviction through the use of evidence obtained in violation of a defendant's rights under that provision.
* * * *
Individual rights so protected are vindicated through the sanction of suppression of evidence. This court has declared that evidence is suppressed for violations of the Oregon Constitution "to preserve * * * rights to the same extent as if the government's officer had stayed within the law." * * * [T]he focus then is on protecting the individual's rights vis-à-vis the government, not on deterring or punishing the excessive conduct of any particular governmental actor, local or otherwise.
(Citations omitted).
While we do not disagree with Martin's contention that supreme courts in some states have subscribed to a right-vindicating rationale for an exclusionary rule based on a state constitution, the Minnesota Supreme Court has stated:
The purpose of the exclusionary rule is to deter unconscionable invasions of privacy by law enforcement officials in pursuit of their duties.
State v. Conaway, 319 N.W.2d 35, 41 (Minn.1982).
*218 Martin acknowledges that the Minnesota Supreme Court has stated that deterrence is the purpose of the exclusionary rule but contends that it has done so when applying the federal exclusionary rule, not the state-law-based exclusionary rule. However, in State v. Richter, 270 Minn. 307, 133 N.W.2d 537 (1965), when determining whether to retroactively apply Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), the Minnesota Supreme Court discussed the exclusionary rule in the context of both the state and federal constitutions. In Richter, the appellant argued that his 1951 conviction had been based on an unconstitutional search and seizure that induced his guilty plea and, therefore, the exclusionary rule should apply retroactively to vacate the conviction. Id. at 307-08, 133 N.W.2d at 537-38. The supreme court stated that "we would have little difficulty in holding that the search and seizure were in flagrant violation of U.S. Const. Amends. IV and XIV and Minn. Const. art. 1, § 10." Id. at 309, 133 N.W.2d at 539. Nevertheless, the supreme court refused to apply the exclusionary rule retroactively and vacate the conviction, reasoning:
The rule in Mapp did not strike at a process which denied fundamental fairness in determining defendant's guilt or innocence. On the contrary, evidence illegally seized may well have probative value, as indeed it did in the instant case. Its exclusion is prompted purely by a concern for deterring unconstitutional behavior by law enforcement officers. The denial of a basic constitutional right, such as the right to counsel or the right to a transcript, directly affects the defendant's opportunity to assert his innocence. We agree that the retroactive effect given [Griffin v. People, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (U.S.Ill.1956)] and [Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963)] does not compel a similar treatment of Mapp.

* * * *
* * * [W]e do not feel moved to adopt a rule which can not now have any deterrent effect, but would result only in granting a belated trial to a prisoner who has confessed in open court the details of the offense with which he was charged.
Id. at 315-16, 133 N.W.2d 537, 133 N.W.2d at 542-43 (footnote omitted).
In State v. Hardy, 577 N.W.2d 212, 217 (Minn.1998), the supreme court recently reiterated that "the primary purpose of the exclusionary rule is to deter police misconduct." As in Richter, the court in Hardy considered issues under the Fourth Amendment to the United States Constitution and Article I, Section 10, of the Minnesota Constitution. Id. at 215. Although the Hardy court did not explicitly state that the purpose of the exclusionary rule under article I, section 10, is to deter police misconduct, we see no reason why the statement it made should be construed as referring only to the federal exclusionary rule.
Because the supreme court has repeatedly stated that the purpose of the exclusionary rule is to deter police misconduct, we conclude that there is no compelling reason to apply more stringent standards when applying the state exclusionary rule than when applying the federal exclusionary rule. The court's reasoning with respect to the federal exclusionary rule in Scott is applicable to the state exclusionary rule under Article I, Section 10, of the Minnesota Constitution. As the court stated in Scott,
Application of the exclusionary rule would both hinder the functioning of the state parole systems and alter the traditionally flexible, administrative nature of parole revocation proceedings. The rule would provide only minimal deterrence benefits in this context, because application of the rule in the criminal trial context already provides significant deterrence of unconstitutional searches.
Scott, 118 S.Ct. at 2020.
*219 There is no allegation that the officer who arrested Martin knew that he was a probationer and carried out the illegal search to obtain evidence of a probation violation. The exclusionary rule has already been applied in the criminal proceeding against Martin, and, presumably, excluding the cocaine and dismissing the possession charge against Martin has had the intended deterrent effect on police misconduct. Extending the exclusionary rule to Martin's probation revocation hearing when the officer did not know that Martin was on probation would provide minimal, if any, additional deterrence.
Against this minimal, additional deterrence, we must balance the impact that exclusion of probative, but illegally obtained, evidence would have on the probation system. The purpose of probation is rehabilitation without incarceration. State v. Austin, 295 N.W.2d 246, 250 (Minn.1980). The exclusionary rule may obstruct the probation system in accomplishing its remedial purpose by (1) preventing the court from considering relevant evidence in deciding whether to revoke probation; (2) allowing probationers to escape the consequences of noncompliance; and (3) making courts reluctant to place defendants on probation initially, in light of the possibility that relevant evidence may be unavailable in a probation revocation proceeding. Because the officer did not know Martin's probation status, the marginal deterrent effect of the exclusionary rule is outweighed by these costs. Cf. Payne v. Robinson, 10 Conn.App. 395, 523 A.2d 917, 920-21 (1987) (refusing to apply exclusionary rule to probation revocation proceeding when officer was unaware of probationer's status), aff'd, 207 Conn. 565, 541 A.2d 504 (1988).
Martin also argues that the cocaine was inadmissible under Minn.Stat. § 626.21 (1998), which provides that illegally obtained evidence is not admissible in any trial or hearing. Because Martin's motion to suppress the cocaine was not made pursuant to Minn.Stat. § 626.21 and did not cite this statute, he did not give the district court an opportunity to consider this argument. We, therefore, will not address it. See State v. Kremer, 307 Minn. 309, 313, 239 N.W.2d 476, 478 (1976) (a reviewing court will not decide issues raised for the first time on appeal, even if error concerns allegedly unconstitutional criminal procedures).

DECISION
The evidence obtained during the illegal search was admissible at Martin's probation revocation hearing.
Affirmed.