STATE, DEPARTMENT OF PUBLIC SAFETY, v.
CLAYTON GILES GROVUM.
STATE, DEPARTMENT OF PUBLIC SAFETY, v.
RICHARD MICHAEL GRUBER.

209 N. W. 2d 788.

July 27, 1973—Nos. 43905, 43904.

*Warren Spannaus,* Attorney General, and *Frederick S. Suhler, Jr.,* Special Assistant Attorney General, for appellant.

*Grannis & Grannis* and *Patrick A. Farrell,* for respondent Grovum.

*Dennis E. Prohofsky,* Legal Assistance of Ramsey County, Inc., for respondent Gruber.

Heard before Knutson, C. J., and Peterson, Todd, and Gillespie, JJ.

TODD, JUSTICE.

In each of the above cases, the state appeals from an order of the St. Paul municipal court rescinding revocation of the defend-

ant's driver's license, which had been ordered by the commissioner of public safety following defendant's refusal to allow chemical testing to determine the alcoholic content of his blood. The lower court's orders were entered in response to each defendant's motion made on the ground that the defendant had not been placed under arrest at the time of the refusal to take a chemical test of his blood, breath, or urine. We reverse.

Each defendant was involved in a separate and unrelated motor vehicle accident, one on January 9, 1972, and one on February 2, 1972. By coincidence, the same peace officer responded to the report of each accident. In each case, believing there was probable cause that the defendant had been operating his motor vehicle while under the influence of alcohol, the officer requested the defendant to take a preliminary screening test to determine his blood alcohol content. Each defendant refused to take such preliminary screening test. The officer then requested each defendant to allow a chemical analysis test of his blood, breath, or urine, after properly informing each defendant of his rights under the Minnesota statute regarding such chemical testing and further informing each defendant that his license was subject to revocation for refusal to take such test. The investigating officer completed the peace officer's certificate under our implied-consent law, indicating the existence of probable cause and that each defendant had been involved in an accident involving property damage, that each had refused to take the preliminary screening test, and, further, that each had refused to permit a sample of blood, breath, or urine to be taken after being advised of his rights and responsibility under the implied-consent law. No arrest was made of either defendant.

The commissioner of public safety notified each defendant of his intention to revoke his driver's license pursuant to statute, and each defendant timely requested a court hearing for review of the revocation order as provided by statute. The lower court rescinded each revocation order by its orders of August 7, 1972. No memorandum of the lower court accompanied its orders, but

in reviewing the motions of the respective defendants, it is obvious that the orders were based on the ground that neither party had been lawfully placed under arrest at the time of the refusal to take the test.

■ Prior to the adoption by our legislature of L. 1971, c. 893, which amended the implied-consent statute, in order for a person to be required to submit to a chemical test of his blood, breath, or urine, or, upon refusing, to be subject to license revocation proceedings, the peace officer was required to have reasonable and probable grounds to believe that the person was driving or operating a motor vehicle while under the influence of an alcoholic beverage and was also required to place the person lawfully under arrest. The question then is whether the amendments to the implied-consent statute made by L. 1971, c. 893, removed the requirement of lawful arrest for license revocation proceedings under the statute.

■ L. 1971, c. 893, amended not only Minn. St. 1969, § 169.123, subd. 2, of the implied-consent law, but also amended Minn. St. 1969, § 169.121, subds. 1 and 2, which latter statute relates to the criminal offense of operating a motor vehicle while under the influence of drugs or alcoholic beverages. The amendments to both statutes, among other changes, provided for administration of a preliminary screening test for intoxication. However, there is a clear distinction regarding the use of such test under each statute. The amendments to § 169.121, subd. 1, added in part the following language:

"When a police officer has reason to believe from the manner in which a driver is driving, operating, or actually controlling, or has driven, operated, or actually controlled, a vehicle that such driver may be violating this subdivision he may require the driver to provide a sample of his breath for an immediate preliminary screening test or analysis before an arrest is made, using a device approved by the commissioner for this purpose. The results of such a preliminary screening test or analysis shall be used only for the purpose of guiding the officer in deciding

whether an arrest should be made, and shall not be used as evidence in any court action.

"The driver of any motor vehicle shall furnish such a sample of his breath when required to do so. The provisions of Minnesota Statutes, Section 169.123, shall apply to any driver who refuses to furnish a sample of his breath; provided that the license or permit of a driver shall not be revoked pursuant to Minnesota Statutes, Section 169.123, Subdivision 4, for refusal to provide a sample of his breath for preliminary screening purposes, if he submits to a blood, breath, or urine test to determine the alcoholic content of his blood pursuant to Minnesota Statutes, Section 169.123, Subdivision 2. Another test may be required of the driver following the screening test pursuant to the provisions of this chapter, which shall be admissible evidence in accordance therewith.

"Nothing in this subdivision authorizing such preliminary screening test or analysis shall be construed as changing, limiting, or otherwise modifying the procedure, safeguards, and other provisions of sections 169.121 to 169.123 or ordinances in conformity therewith."

The use of the preliminary screening test for determining possible violations of the driving-while-under-the-influence statute is delineated by the statute and is solely for the purpose of guiding the officer as to whether an arrest should be made. We hold that under the provisions of § 169.121, subd. 1, the refusal to take a preliminary screening test cannot be grounds for revocation of the driver's license privilege. Therefore, the revocation of each defendant's driver's license cannot be based upon the refusal to submit to a preliminary screening test under the provisions of § 169.121, subd. 1.

■ However, as noted above, the 1971 amendments did not limit the use of preliminary screening tests to § 169.121, subd. 1. In addition, the amendments changed the language of § 169.123, subd. 2, to read in part as follows:

"Any person who drives or operates a motor vehicle upon the public highways of this state shall be deemed to have given consent subject to the provisions of Laws 1961, Chapter 454, to a chemical test of his blood, breath, or urine for the purpose of determining the alcoholic content of his blood. The test shall be administered at the direction of a peace officer. The test may be administered when the officer has reasonable and probable grounds to believe that a person was driving or operating a motor vehicle while said person was under the influence of an alcoholic beverage, and one of the following conditions exist: (1) the said person has been lawfully placed under arrest for alleged commission of the said described offense in violation of section 169.121, or an ordinance in conformity therewith; or, (2) the person has been involved in a motor vehicle collision resulting in property damage, personal injury, or death. The test may also be administered when the officer has reason to believe that a person was driving or operating a motor vehicle in violation of section 169.121 or an ordinance in conformity therewith and the person has either refused to take the preliminary screening test provided for by section 161.121, subdivision 1, or such preliminary screening test was administered and recorded a blood alcohol level of .10 percent or more by weight of alcohol."

As noted previously, our former statute required probable cause and lawful arrest before refusal to allow any chemical test could result in revocation of a driver's license. The effect of the 1971 amendments was to enlarge the grounds upon which a peace officer may request a person to submit to chemical testing of his blood, breath, or urine. The amendments still require that the officer have reasonable and probable grounds to believe that a person was driving or operating a motor vehicle while under the influence of an alcoholic beverage and, in addition, allow the test to be requested if any one of the following conditions exist: (a) The person has been validly placed under arrest for commission of the offense; or (b) the person has been involved in a motor vehicle collision resulting in death, injury, or property damage;

or (c) the person has refused, when properly requested, to take a preliminary screening test; or (d) a preliminary screening test was taken and recorded a blood alcohol content of .10 percent or greater.

In each of the cases before us, the peace officer has alleged that he had reasonable and probable grounds to believe that the defendant was operating his motor vehicle while under the influence of alcoholic beverages; that the defendant had been involved in an accident resulting in property damage; and further that the defendant had refused to take a preliminary screening test. Under these circumstances, the peace officer had a right under § 169.123, as amended, to request the defendants to take a chemical test after properly advising them of their rights and warning them of the possibility of revocation of their licenses. It is the refusal to take the second test which is the statutory basis for the revocation order of the commissioner. The refusal to take the preliminary screening test, combined with probable cause, is sufficient grounds to permit the peace officer to request the § 169.123 test. In addition, the fact that an accident had occurred with resulting property damages, combined with the existence of probable cause, was a further ground to request the defendants to take the chemical test as provided by § 169.123. The effect of the statutory change was to make the requirement that the defendant be placed under arrest a condition to requiring his submission to the § 169.123 test only one of four conditions, any one of which, in combination with probable cause, would be sufficient to invoke the sanctions of the statute. Thus, it is obvious that the legislature intended to broaden the scope of our implied-consent statute.

■ Defendants contend that in making these legislative changes in our implied-consent statute, the legislature failed to make all necessary changes therein and that references in the remaining provisions of § 169.123 indicate a legislative intent to retain the requirement of an arrest before refusal to allow chemical testing results in revocation. These references include

the retention of the words "arrested person" in subd. 2 with respect to informing a driver that his right to drive may be revoked; the failure to change the language of subd. 4 referring to the refusal of a "person under arrest" to take the test and the certificate of the officer referring to "the arrested person"; and the further failure to change the language of subd. 6, which refers to establishing whether or not the person was "lawfully placed under arrest."

Admittedly, prior to the 1971 amendments this language was clear and unambiguous. However, the result of the 1971 amendments, in the opinion of this court, was to render this language ambiguous. Consequently, guided by Minn. St. 645.16, which sets forth guidelines for interpreting language which is not clear and free from all ambiguity, and by the provisions of Minn. St. 645.17 stating presumptions to be used in ascertaining legislative intent, we hold that the effect of the 1971 amendments was to create a status of persons similar to an arrested person. The term "arrested person" or "person under arrest" must be broadened in its application to include a person in a situation where he is not under arrest but a peace officer has probable cause to believe he has been operating a motor vehicle while under the influence of alcohol and where one of the other conditions, outlined previously, exists.

Therefore, we hold that the lower court was in error in rescinding the revocation orders and the matters are remanded to the lower court for further proceedings under the provisions of § 169.123.

Reversed and remanded.

MR. JUSTICE YETKA and MR. JUSTICE SCOTT, not having been members of this court at the time of the argument and submission, took no part in the consideration or decision of this case.