Edward COSTILLO, Respondent,

v.

COMMISSIONER OF PUBLIC SAFETY, Petitioner, Appellant.

No. CX-87-577.

Supreme Court of Minnesota.

Dec. 18, 1987.

Hubert H. Humphrey, III, Atty. Gen., Joel A. Watne, St. Paul, for appellant.

Robert H. Meier, Minneapolis, for respondent.

## OPINION

AMDAHL, Chief Justice.

This is an implied consent proceeding. The trial court sustained the revocation of the license of the driver, Edward Costillo, because Costillo failed an implied consent test. The court of appeals held (1) that the arrest of Costillo in the doorway of his home for leaving the scene of an accident was an illegal warrantless arrest for a misdemeanor not committed in the presence of the arresting officers, (2) that the officers obtained probable cause to believe that Costillo was under the influence only as a direct result of the illegal arrest, and (3) that without probable cause to believe that Costillo was under the influence there was no basis for requiring Costillo to take a test. We reverse the decision of the court of appeals and reinstate the decision of the trial court sustaining the license revocation.

At 7:30 p.m. on August 15, 1986, Carl Ranheim was in his car in Brooklyn Park waiting for a chance to turn left when Costillo drove his car into the rear of Ranheim's car. Ranheim got out, copied Costillo's car license number, and asked to see Costillo's driver's license and insurance information card. Costillo said his name was "Ed Maties," that his insurer was "Travelers," and that he did not have a driver's license. When Ranheim said he was going to call the police, Costillo got in his car and left the scene.

Ranheim apparently drove directly to his nearby house and called the police. Officer Bruce Fennern went to Ranheim's residence immediately and saw the damage to the vehicle. Meanwhile, Officer Diane Ries, in a separate car, passed the scene of the collision, where she saw broken head-

light glass. When Fennern and Ries learned through police channels that the car driven by Costillo was registered to Mrs. Costillo, they went and met at the Costillo residence, where they spotted the described car, a Malibu with front-end damage, in the driveway.

Costillo, who fit the description given by Ranheim, answered the door of the house. Asked if he was Ed Costillo, he said no, he was "Ed Maties." Officer Fennern noted that Costillo's eyes were "really bloodshot" and that he had a "strong" odor of alcohol on his breath and that his speech was slurred. Officer Ries apparently did not get close enough to note these signs of intoxication. Officer Fennern asked Costillo if he had been driving the Malibu. Costillo said that he had just gotten home but had been in the Cadillac, which the officers saw wedged in between the house and the Malibu. When Fennern asked him to step outside so that they could talk about an accident, Costillo, who was standing in the open doorway, became belligerent and said he would not do so without a warrant. Fennern told him that he was under arrest for hit and run and Ries grabbed his arm. Fennern grabbed Costillo's other arm when he tried to get away and they took him outside and handcuffed him. Fennern asked if Costillo had drunk anything after the accident, and Mrs. Costillo said no. Shortly thereafter Fennern and Ries drove Costillo to Ranheim's house, and Ranheim positively identified Costillo as the driver who fled the scene. At the police station Costillo failed coordination tests, failed a preliminary breath test, and failed a regular breath test (his reading on the latter test was .17).

At the hearing Costillo's attorney sought rescission of the revocation on the ground that the warrantless misdemeanor arrest of

petitioner in his own house violated *Payton v. New York,* 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980), as applied in *Welsh v. Wisconsin,* 466 U.S. 740, 104 S.Ct. 2091, 80 L.Ed.2d 732 (1984). The trial court rejected this argument, ruling simply that the arrest occurred in the doorway after Costillo voluntarily opened the door in response to the knocking by the police and that therefore there was no warrantless entry within the meaning of *Payton* and there was no need to decide if the *Welsh* case had any application.[1] This holding was clearly consistent with our cases. *See, e.g., State v. Howard,* 373 N.W.2d 596, 598–99 (Minn. 1985) (*Payton* does not prohibit nonexigent warrantless arrest initiated at threshold of a suspect's residence if suspect voluntarily opens the door in response to knocking by the police).

Costillo appealed to the court of appeals. The introductory part of the argument section of his brief quoted in full the text of the Fourth Amendment, the comparable provision of the Minnesota Constitution, and Minn.Stat. § 629.34, which deals with when police officers may arrest without a warrant. Costillo's attorney did not argue that the arrest was an illegal warrantless misdemeanor arrest for an offense not committed in the officers' presence. Rather, he argued, as in the trial court, that the arrest was made after a nonexigent entry into Costillo's house in violation of the *Payton* and *Welsh* cases. We do not know if counsel made a different argument at oral argument. In any event, the court of appeals did not decide the *Payton-Welsh* issue. Instead, it said that the officer could require Costillo to submit to a breath test only if the officer had probable cause that Costillo had driven while under the influence and it reasoned that the probable cause in this case was the suppressible

---

1. *Welsh* involved the warrantless entry of a house to arrest a driver for the offense of driving while intoxicated, an offense that had occurred minutes earlier. The state claimed exigent circumstances—specifically, the need to obtain evidence of the defendant's blood alcohol level—justified the warrantless entry. The United States Supreme Court held that the circumstances were not exigent, stating that the best indication that the state was not very interested

in arresting drivers for driving while intoxicated was that the state had chosen to classify the first offense of DWI as a noncriminal civil forfeiture offense for which no jail term was possible. The United States Supreme Court has not decided whether the same result obtains in a case where the DWI offense for which the defendant is arrested is a criminal offense for which a jail term is possible.

fruit of an illegal warrantless arrest for a misdemeanor not committed in the presence of the arresting officers. *Costillo v. Commissioner of Public Safety*, 412 N.W. 2d 19 (Minn.App.1987).

The starting point of our analysis is Minn.Stat. § 169.123, subds. 2(a) and 6 (1986), which together make it clear that a police officer may require testing if the officer has probable cause to believe that the person drove while under the influence and if one of four other considerations exist: (1) the person has been placed under arrest for violating section 169.121, (2) the person has been involved in a motor vehicle accident resulting in property damage, personal injury or death, (3) the person has refused to take the preliminary breath test, or (4) the person has failed a preliminary breath test.

■ In this case it is not clear from the record that the arresting officers subjectively believed that they had probable cause to believe Costillo was under the influence at the time they were talking to Costillo in the doorway. But the issue is not whether the officers subjectively felt that they had probable cause but whether they had objective probable cause. *See Scott v. United States*, 436 U.S. 128, 136–37, 98 S.Ct. 1717, 1722–23, 56 L.Ed.2d 168 (1978) *reh'g denied* 438 U.S. 908, 98 S.Ct. 3127, 57 L.Ed.2d 1150; *State v. Speak*, 339 N.W.2d 741, 745 (Minn.1983). We believe that at the time the officers talked with Costillo in the doorway there was objective probable cause present that Costillo had driven while under the influence: (a) the officers had reason to believe that Costillo had rear-ended Ranheim's car, (b) the officers had reason to believe Costillo had given a false name and had intentionally fled the scene, (c) one of the officers observed that Costillo's eyes were "really bloodshot," that he had a "strong" odor of alcohol on his breath and that his speech was slurred, and (d) the officers observed belligerent conduct on Costillo's part. In our view, these things add up to objective probable cause that Costillo had been driving while under the influence.

■ The officers could have lawfully arrested Costillo for DWI even though the offense had not occurred in the officers' presence. This is because section 169.121, subd. 1a expressly allows such an arrest notwithstanding the in-presence requirement of section 629.34, subd. 1(c)(1). The officers either did not subjectively believe that they had probable cause to believe Costillo was under the influence or they did not stop to think that it might have made sense to arrest Costillo for both offenses rather than just for the hit and run offense.

■ Since the officers did not arrest Costillo for violating section 169.121, the justification for requiring Costillo to submit to testing must be that one or more of the three other considerations stated in section 169.123 existed. Since the officers had reason to believe that Costillo had been involved in a motor vehicle accident involving property damage and since there was, in our view, objective probable cause to believe that Costillo had driven while under the influence, we believe that the officers were justified in requiring Costillo to submit to testing. *Johnson v. State, Department of Public Safety*, 351 N.W.2d 2 (Minn.1984); *State, Department of Public Safety v. Grovum*, 297 Minn. 66, 209 N.W. 2d 788 (1973).

■ The officers could have made the request at the doorway without even arresting Costillo. The issue thus becomes whether it makes any difference that the officers subjected Costillo to what was an illegal misdemeanor arrest for hit and run driving. We do not think that it should make any difference. For one thing, Costillo apparently did not raise, either in the trial court or in the court of appeals, the issues of whether there was a violation of section 629.34 and whether the exclusionary rule should apply to a violation of that statute. Secondly, as we have said, objective probable cause that Costillo was under the influence existed before the arrest occurred and it therefore was incorrect for the court of appeals to conclude that the probable cause was a fruit of any illegality in arresting Costillo. Thirdly, the court of

appeals wrongly assumed that the exclusionary rule applies in the context of a violation of the statutory prohibition of warrantless misdemeanor arrests for offenses not committed in the presence of the arresting officer.[2]

In conclusion, we hold that the officers acquired objective probable cause to believe Costillo was under the influence when they spoke with him in the doorway, that the arrest did not violate *Payton* or *Welsh*, that the probable cause was not the fruit of any violation of state law in arresting Costillo, and that the officers were justified under section 169.123 in requiring Costillo to submit to breath testing.

Reversed and judgment of trial court reinstated.

---

**2.** In fact, we have not decided this issue. *Cf.,* however, *State v. Mitjans,* 408 N.W.2d 824 (Minn.1987) (refusing to automatically exclude confession obtained from Spanish-speaking defendant in violation of statute requiring appointment of interpreter); *State v. Schinzing,* 342 N.W.2d 105 (Minn.1983) (questioning whether exclusionary rule should apply to any violation of state law by officer in acting outside his jurisdiction); *State v. Wiberg,* 296 N.W.2d 388 (Minn.1980) (refusing to automatically exclude statement obtained as a product of unnecessary delay before arraignment under our state rules of criminal procedure); *State v. Lien,* 265 N.W. 2d 833 (Minn.1978) (holding that nighttime execution of search warrant was a statutory, not a constitutional, violation and that exclusion of evidence seized therefore was not mandated); *see also State v. Eubanks,* 283 N.C. 556, 196 S.E.2d 706 (1973) (refusing to exclude in DWI case breathalyzer evidence obtained following warrantless arrest that was legal under constitution but was illegal under state law requiring warrant before officer can arrest person for misdemeanor committed outside officer's presence), discussed at 1 LaFave, *Search and Seizure,* § 1.5(b), at 106–07 (2d ed. 1987).