Jonathan Eugene STEELE,
Petitioner, Respondent,

v.

COMMISSIONER OF PUBLIC
SAFETY, Appellant.

No. C4–88–2335.

Court of Appeals of Minnesota.

May 9, 1989.

**428**

Andrew S. Birrell, Meshbesher, Singer & Spence, Minneapolis, for petitioner, respondent.

Hubert H. Humphrey, III, Atty. Gen., Joel A. Watne, Sp. Asst. Atty. Gen., St. Paul, for appellant.

Considered and decided by NIERENGARTEN, P.J., and NORTON and MULALLY,* JJ., without oral argument.

## OPINION

EDWARD D. MULALLY, Judge.

Respondent was arrested for driving while under the influence and he challenged his subsequent license revocation under the implied consent law. The trial court determined that the officer did not have probable cause to believe respondent was in physical control of the motor vehicle while under the influence, and rescinded the revocation. The Commissioner of Public Safety appeals.

### FACTS

Officer William Wyffels was on duty on July 3, 1988, at approximately 11 p.m., when he and Officer James Schlossmacher received a report of a suspicious vehicle parked on a street. They approached the vehicle, which was parked at the very end of a cul-de-sac. Wyffels walked up to the driver's side of the vehicle and saw respondent sitting in the driver's seat, slumped over into the passenger's seat. He appeared to be sleeping; the officer roused him.

Wyffels asked for identification and testified that respondent found his driver's license after 30–45 seconds of rummaging through his vehicle and wallet. Respondent explained he had been there about one-half hour, waiting for a friend.

Wyffels testified that he noticed the odor of an alcoholic beverage coming from respondent's breath, that his eyes were very bloodshot and glassy, and that he seemed very confused. While the trial court did not make this finding, Wyffels testified respondent told the officer he had four drinks that evening.

The officer asked respondent to perform three field sobriety tests. The first one required respondent to touch his index finger to his nose with his eyes shut and his head tilted back. Respondent swayed and did not bring the tip of his index finger to his nose. The second test required respondent to recite the alphabet; he did this correctly. The third test required respondent to walk heel-to-toe and count out loud; he also did this test correctly. The officer testified that respondent was not as fully alert and conscious as he would have been if he had not been drinking. He then gave respondent a preliminary breath screening test (PBT), which showed a "fail" result.

The PBT is calibrated to indicate pass, warn or fail at particular alcohol concentration levels. Wyffels testified from the calibration log that Sergeant Brown calibrated the device on July 1, 1988. Wyffels testified he was trained as to the setting of the machine. When asked the level at which the unit was calibrated, the trial court sustained an objection on hearsay and relevancy grounds.

Schlossmacher and Wyffels testified that they did not form an opinion as to whether respondent was under the influence until after the PBT showed a "fail" result.

Officer Wyffels arrested respondent for driving while under the influence, and read him the implied consent advisory. Respondent agreed to take a breath test. The breath test revealed an alcohol concentration of .10.

---

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 2.

The referee who heard the matter made extensive findings, including that the Commissioner offered no evidence of the level of the calibration of the preliminary breath test. He found that the officer did not have probable cause to believe respondent was in physical control of a motor vehicle in violation of Minn.Stat. § 169.121, subd. 1 (1986). The referee stated:

Both Officers state that they did not form their opinion until after the failure of the PBT. There is no evidence of the level at which the PBT was calibrated. There was no observed driving conduct and Petitioner performed well on field sobriety testing.

The referee thus determined the arrest was unlawful for lack of probable cause. The trial court adopted the recommendations and issued an order rescinding the revocation.

The Commissioner of Public Safety appeals.

### ISSUE

1. Did the trial court err in concluding the officer lacked probable cause to believe respondent was under the influence?

2. Did the trial court err in refusing to consider the result of the PBT in making the probable cause determination?

### ANALYSIS

1. Minn.Stat. § 169.123, subd. 2(a) (Supp.1987) provides in relevant part that a test may be required "when an officer has probable cause to believe that the person was driving, operating, or in physical control of a motor vehicle in violation of section 169.121 * * *."

Reasonable and probable grounds justifying an officer in requesting an individual to take a test for driving while under the influence of alcoholic beverage under the implied-consent law exist whenever there are facts and circumstances known to the officer which would warrant a prudent man in believing that the individual was driving or operating a motor vehicle on the highway while under the influence of an alcoholic beverage.

*State v. Harris,* 295 Minn. 38, 42, 202 N.W. 2d 878, 881 (1972). In *State v. Olson,* 342 N.W.2d 638 (Minn.Ct.App.1984), this court stated that reviewing courts are to give "great deference" to the peace officer's determination.

An after-the-fact scrutiny should not take the form of a de novo review. Rather, the duty of the reviewing court is simply to ensure that the officer had a substantial basis for concluding that probable cause existed at the time of invoking the implied consent law.

*Id.* at 641.

The court should consider the totality of the circumstances. *See Eggersgluss v. Commissioner of Public Safety,* 393 N.W. 2d 183, 185 (Minn.1986). The test for probable cause is not whether the officers subjectively felt they had probable cause, but whether they had objective probable cause. *Costillo v. Commissioner of Public Safety,* 416 N.W.2d 730, 733 (Minn.1987). The findings of fact by a trial court will not be set aside unless clearly erroneous, because the trial court has the opportunity to judge the credibility of the witness. *State, Department of Highways v. Beckey,* 291 Minn. 483, 487, 192 N.W.2d 441, 445 (1971). Conclusions of law, on the other hand, may be overturned upon a showing that the trial court has erroneously construed and applied the law to the facts of the particular case. *See Berge v. Commissioner of Public Safety,* 374 N.W.2d 730, 732 (Minn. 1985); *State v. Kvam,* 336 N.W.2d 525, 528 (Minn.1983).

Respondent argues that the officers were obviously unsure as to whether respondent was under the influence of alcohol to any certain degree before administering the preliminary breath test to him, as demonstrated by the fact that a PBT was given. He contends that without the PBT, the officer did not have probable cause.

The officers' testimony that they did not feel they had probable cause at the time the PBT was offered is not determinative. *See Costillo,* 416 N.W.2d at 733. The objective manifestations of probable cause present here include that respondent was

found asleep in his vehicle at 11:00 p.m., he had an odor of an alcoholic beverage on his breath and glassy and bloodshot eyes, he was confused, he admitted having four drinks, and he performed poorly on one of the three field sobriety tests. While these facts may not indicate respondent was extremely intoxicated, they do provide probable cause to believe respondent was under the influence. *See Berge,* 374 N.W.2d at 733; *Holm v. Commissioner of Public Safety,* 416 N.W.2d 473, 475 (Minn.Ct.App. 1987).

2. The officers also based their probable cause determination on the "fail" result of the PBT. The trial court, however, refused to consider the result of the PBT because there was no evidence as to the level at which the PBT was calibrated. It did not allow the officer to testify as to this fact.

The purpose of requiring the PBT is to assist the officers in making a probable cause determination when they are unsure whether the driver is under the influence. *Marben v. State, Department of Public Safety,* 294 N.W.2d 697, 700 (Minn.1980); *see also* Minn.Stat. § 169.121, subd. 6 (1988). It is not used for the ultimate determination of the driver's alcohol concentration. *Windschitl v. Commissioner of Public Safety,* 355 N.W.2d 146, 149 (Minn.1984). The result of the PBT may not be used in any court action except to prove a test was properly required of a person pursuant to Minn.Stat. § 169.121, subd. 6.

The trial court's decision would appear to require that the officer who calibrated the PBT device testify when the arresting officer relies upon the PBT result in making the probable cause determination. In these circumstances, we deem that unnecessary. The revocation was based upon the Intoxilyzer test result of an alcohol concentration of .10, not the PBT result. The PBT is intended to provide probable cause to believe the driver has an alcohol concentration of .10 or more, which result was borne out by the Intoxilyzer test result. The Commissioner was not required to produce the officer who calibrated the PBT device

under these circumstances. *See Windschitl,* 355 N.W.2d at 149; *Lundquist v. Commissioner of Public Safety,* 411 N.W. 2d 608, 610 (Minn.Ct.App.1987).

## DECISION

The order rescinding the revocation of respondent's driver's license is reversed.

Reversed.