*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A16-0640**

State of Minnesota,
Appellant,

vs.

Marcus Wade Hall,
Respondent.

**Filed September 6, 2016
Reversed and remanded
Connolly, Judge**

Ramsey County District Court
File No. 62SU-CR-15-2277

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Heather Monnens, Robb L. Olson, Geck, Duea & Olson, PLLC, White Bear Lake, Minnesota (for appellant)

Alexander H. De Marco, St. Paul, Minnesota (for respondent)

Considered and decided by Worke, Presiding Judge; Ross, Judge; and Connolly, Judge.

**U N P U B L I S H E D   O P I N I O N**

**CONNOLLY**, Judge

Appellant the State of Minnesota challenges the district court's grant of respondent's motion to suppress the evidence of his driving while intoxicated (DWI) on

the ground that respondent was unlawfully seized from his home. Because the police officer had probable cause to arrest respondent at the threshold of his home, we reverse and remand.

## FACTS

About 8:00 in the evening of July 6, 2015, complainant E.S.B. made a 911 report that: (1) while he was in his driveway with his children, he observed respondent Marcus Wade Hall, whom E.S.B. recognized as a neighbor, speed past, going about 50 mph in the 30 mph zone; (2) E.S.B. also recognized respondent's car, a gray Saturn; (3) respondent was wearing khaki pants and a black shirt; (4) E.S.B. yelled at the car to slow down; (5) E.S.B. walked to respondent's residence; and (6) they had an altercation.

A police officer in uniform was dispatched to the scene in a squad car. He first talked to E.S.B., then went to respondent's house and knocked on the front door. The door was answered by a man wearing khaki pants and a black shirt whom the officer identified as respondent. Respondent's eyes were bloodshot, he emitted the odor of alcohol, his speech was slurred, and he held on to the front door to keep his balance. The officer remained standing on the porch; he did not enter respondent's house.

Respondent told the officer he had just come home from a bar where he had consumed two beers, had driven past E.S.B.'s house, had parked his car in his own garage, and had been involved in an altercation with E.S.B. Based on respondent's condition and his statements, the officer believed that respondent had been driving while intoxicated.

The officer asked respondent to open the garage so he could see if the car was there; respondent refused, saying "Because it's my property." The officer then asked respondent

2

to come out of his house to perform some field sobriety tests; respondent said it was his house and the officer should not be there. The officer said he did not want to have to come in and get respondent, but would do so if necessary, and that respondent would be arrested for DWI in any event. Respondent then came out of the house and attempted to perform the field sobriety tests. He failed a preliminary breath test (PBT). The officer determined that he had probable cause to arrest respondent and arrested him. Respondent was taken to a police station, where the implied consent advisory was read to him, and he provided a breath sample; it indicated an alcohol concentration of 0.19.

Respondent was charged with misdemeanor DWI. He moved to dismiss the charges on several grounds or, in the alternative, to suppress all evidence acquired subsequent to his leaving his house on the ground that his Fourth Amendment rights were violated when he was unlawfully coerced into leaving his house because there was no probable cause for his arrest. At the hearing, the officer testified, and the squad car video was received into evidence.

In his posthearing brief, respondent addressed three issues: (1) was he unlawfully seized from his home without a warrant; (2) was there sufficient probable cause to arrest him; and (3) did any exceptions to the warrant requirement apply to the warrantless chemical test of respondent. The district court concluded that "the [s]eizure was not lawful because [respondent] was coerced and threatened into leaving the sanctuary of his house" and suppressed the results of the PBT, the field sobriety tests, and the subsequent breath test at the police station. But the district court did not suppress the information obtained prior to respondent's leaving his house because it concluded that the officer had probable

3

cause to arrest respondent. Finally, the district court noted that it did not need to reach the question of whether respondent's warrantless breath test was lawful because it had suppressed "all evidence following the unlawful order [to respondent] to exit his house."

The state challenges the order suppressing the evidence.

## DECISION

"[W]hen reviewing a pre-trial order suppressing evidence where the facts are not in dispute and the [district] court's decision is a question of law, the reviewing court may independently review the facts and determine, as a matter of law, whether the evidence need be suppressed." *State v. Othoudt*, 482 N.W.2d 218, 221-22 (Minn. 1992) (holding that, absent some manifestation of consent to an officer's warrantless entry into a home, the entry is not made with consent).

To support its statement that "[t]he [s]eizure was not lawful because [respondent] was coerced and threatened into leaving the sanctuary of his house," the district court relied on language from *Othoudt*: "[T]his court will not look kindly upon warrantless entries of family residences, justified on the flimsiest and most pretextual of excuses. The constitutional right to be free from unjustified, official invasions of one's home is basic, and this court will not tolerate its violation." *Id*. at 224. But *Othoudt* is distinguishable. Here, the officer did not enter respondent's house. In that case, the officer entered the home without knocking or seeking permission to enter from a person sitting in the entryway, questioned the person, and, after the person pointed upstairs, walked upstairs and into the defendant's bedroom, where he found the defendant in bed, told him to get up and get dressed, questioned him, and arrested him. *Id*. at 221. Here, the officer knocked

and remained on the porch while he talked to respondent. There was no "warrantless entry of [a] family residence[]" because the officer stood in the open doorway. *Id.* at 224*; see also Castillo v. Comm'r of Pub. Safety*, 416 N.W.2d 730, 732 (Minn. 1987) (trial court's ruling that, because "the arrest occurred in the doorway after [the defendant] voluntarily opened the door in response to the knocking by the police . . . there was no warrantless entry . . . was clearly consistent with our cases").

For Fourth-Amendment purposes, an open doorway is a public place. *United States v. Santana*, 427 U.S. 38, 42, 96 S. Ct. 2406, 2409 (1976). A defendant who is in a public place when officers initiate an arrest may not thwart the arrest by retreating into his residence. *Id.* at 43, 96 S. Ct. at 2410. Respondent opened the door of his house to the police officer and, while they were in the open doorway, gave the officer probable cause to arrest him by displaying several indicia of intoxication and admitting that he had just driven home from a bar where he had been drinking. Having done these things, respondent had no right to thwart his arrest by retreating into his house. *See id.* at 42-43, 96 S. Ct. at 2409-10 (stating that a defendant's "act of retreating into her house could [not] thwart an otherwise proper arrest" and concluding that the officer's following the defendant into her house was "hot pursuit" and justified his warrantless entry). If respondent had retreated into his house and the officer, without a warrant, had followed him, the warrantless entry of respondent's house would have been justified.

The district court offers no support for its view that, having seen indicia of intoxication in respondent and heard from respondent that he had just driven home from a bar, the officer needed a warrant to arrest him. "A peace officer may lawfully arrest a

5

person for violation of section 169A.20 . . . without a warrant upon probable cause, without regard to whether the violation was committed in the officer's presence." Minn. Stat. § 169A.40 (2014). Moreover, "only . . . one objective indication of intoxication . . . constitute[s] reasonable and probable grounds to believe a person is under the influence." *Holtz v. Comm'r of Pub. Safety*, 340 N.W.2d 363, 365 (Minn. App. 1983). The officer could have arrested respondent without a warrant while respondent was standing in his doorway, so the officer's telling respondent he would be arrested if he refused to leave the doorway was not illegal. Moreover, it was not necessary for the officer to require field sobriety tests to establish probable cause for the arrest, and the fact that he did require respondent to perform the tests does not invalidate the arrest.

Because there was no basis to suppress the results of either the field sobriety tests or the breath test given at the police station, we reverse the district court's pretrial suppression order and remand this matter to the district court. On remand, the district court should also consider respondent's remaining issue, i.e., whether any of the exceptions to the warrant requirement applies to the warrantless chemical test of respondent.

**Reversed and remanded.**