## COMMISSIONER OF PUBLIC SAFETY, Appellant,

v.

Terry Frederick SHEWCHUK, Respondent.

No. C0-87-779.

Court of Appeals of Minnesota.

Sept. 22, 1987.

Hubert H. Humphrey, III, Atty. Gen., Joel A. Watne, Peggy L. Bunch, Sp. Asst. Attys. Gen., St. Paul, for appellant.

Paul W. Rogosheske, South St. Paul, for respondent.

Heard, considered, and decided by POPOVICH, C.J., and NORTON and LOMMEN *, JJ.

## OPINION

LOMMEN, Judge.

Respondent was arrested for driving while under the influence, and he refused testing to determine his alcohol concentra-

---

* Acting as judge of the Court of Appeals by ap-    pointment pursuant to Minn. Const. art. 6, § 2.

tion. His license was revoked, and he petitioned for judicial review. The trial court rescinded the revocation, because the officer did not have probable cause to believe respondent was driving while under the influence. The Commissioner of Public Safety appeals.

## FACTS

Officer Steven Elliott Hanson was operating stationary radar in the area of Oakdale Court and Oakdale in West St. Paul, when he noticed a vehicle which the radar indicated and which he could observe was speeding. He activated his red lights and siren to stop the vehicle. When it stopped, he requested the driver's license. The driver, respondent Shewchuk, did not have his license and Hanson asked him to sit in the squad car and obtained identifying information. When the officer checked with the dispatcher for respondent's record, the dispatcher advised him that respondent's driver's license was revoked and he had four prior DWIs (the last one in 1983). The officer was asked at the implied consent hearing whether he arrested respondent because he had a history of four DWIs; he said that this was not correct.

Hanson testified on direct examination that he smelled a strong odor of alcoholic beverage emanating from the back of his squad car. He noticed respondent was nervous and fidgety, that his speech was slurred and that he was somewhat unsteady, although he did not fall when he was walking.

On cross-examination, the officer testified that he did not observe any unusual driving behavior when he was following respondent. Hanson also testified that he had to refresh his memory as to the incident. He agreed that the nervousness and fidgety behavior could have been due to the fact that respondent knew his driver's license was under revocation. He testified that there was a distance of approximately 45 feet between the respondent's driver's door and the rear of the squad car. The officer's police report indicated that while respondent was walking, his movements were faltering and unsteady and his walk-

ing appeared to be very rigid. The officer explained that it appeared respondent was attempting to be very careful as to how he walked.

The officer was also questioned about his characterizations of respondent on the alcohol influence report. When describing how respondent walked, the officer had the following choices: swaying, stumbling, staggering, falling, normal or fair; he checked fair. He described the odor of alcohol as moderate, rather than strong. For the description of his speech, the choices were: normal, slurred, confused, incoherent, confiding, talkative, or whispering; he chose slurred and talkative. For choice of words, he chose good rather than bad. The officer indicated on the alcohol influence report that respondent's mental state was polite.

The officer did not require field sobriety tests at the scene, nor did he request a preliminary screening test, although he had the testing device with him. He formed the opinion that respondent was under the influence, based on the odor of alcohol, slurred speech, and unsteady movements he exhibited. Hanson arrested respondent for driving while under the influence and informed him that he would take him to the police station for an implied consent test. Hanson began reading the implied consent advisory at 4:53 p.m., and completed it at 4:56 p.m. When respondent was asked whether he understood the statements, he replied "right." Hanson requested a breath test, and respondent said "no." When asked why, he said "implied consent; not under the influence."

The trial court concluded that the officer lacked probable cause to believe that respondent was driving while under the influence, and rescinded the revocation. The Commissioner of Public Safety appeals.

## ISSUE

Did the trial court err in determining the officer lacked probable cause to believe respondent had been driving while under the influence?

## ANALYSIS

### I.

The trial court determined that the officer did not establish probable cause to arrest respondent for driving while under the influence.

Although the officer observed certain indicia suggesting the driver had consumed some alcohol prior to being stopped for speeding, none of those observations, even taken together, amount to probable cause to believe the driver was under the influence. No field sobriety tests were administered at the stop site. No specific examples of slurred speech were offered into evidence by the officer. The officer described petitioner's walk as petitioner walked approximately 45 feet between his car and the officer's car as unsteady, because it was rigid. The officer did not describe a lack of balance, or swaying. The officer described the odor of alcohol about the petitioner, as moderate. No preliminary breath test was administered. It would have been proper based upon the officer's observations, to request the petitioner to perform a series of field sobriety tests, which is standard practice to aid an officer in determining probable cause for an arrest. That was not done on this occasion. This Court believes the arrest was based more upon dispatcher information that the officer received, that petitioner had prior driving under the influence offenses, rather than upon specific facts on this occasion which would amount to probable cause for an arrest.

■ "Probable cause exists where all the facts and circumstances would warrant a cautious person to believe that the suspect was driving or operating a vehicle while under the influence." *Johnson v. Commissioner of Public Safety*, 366 N.W.2d 347, 350 (Minn.Ct.App.1985) (citations omitted). There is no formula to follow in evaluating a probable cause determination; each case must be decided on its own facts and circumstances. *State v. Olson*, 342 N.W.2d 638, 640 (Minn.Ct.App. 1984). There are numerous signs which may indicate a person is under the influence, but all signs need not be present to form the opinion that a driver is under the influence. *Martin v. Commissioner of Public Safety*, 353 N.W.2d 202, 204 (Minn. Ct.App.1984). While even a single objective indication may be sufficient, depending upon the circumstances, probable cause does not necessarily exist when one objective indicia of intoxication is proven. *Id.* Field sobriety tests are not required to support an officer's reasonable belief that a driver is intoxicated. *Holtz v. Commissioner of Public Safety*, 340 N.W.2d 363, 365 (Minn.Ct.App.1983). Where the existence of probable cause is a close issue, the reviewing court should generally defer to the trial court's evaluation of the officer's testimony, because the court is in a better position to observe and evaluate that testimony. *Kunz v. Commissioner of Public Safety*, 349 N.W.2d 593, 596 (Minn.Ct.App. 1984).

■ Appellant Commissioner argues that Officer Hanson had a number of facts which provided a substantial basis for his determination that probable cause existed to charge respondent with a DWI violation. Respondent was speeding, and the officer had to activate his siren, as well as the red lights, to stop the vehicle. The officer observed respondent's physical condition and demeanor, including the odor of alcohol on his breath, slurred speech, and unsteady walk, and noticed that respondent was "nervous and fidgety." The Commissioner argues the trial court was clearly erroneous when it did not determine respondent's walk was unsteady, because the officer's uncontradicted testimony was that the respondent's walk was unsteady, citing *Keane v. Commissioner of Public Safety*, 360 N.W.2d 357, 360 (Minn.Ct.App.1984).

The Commissioner relies upon the officer's testimony on direct examination. However, the officer's memory as to this particular event had to be refreshed. The alcohol influence report contradicted the officer's characterization on direct examination of respondent's condition. As respondent argues, we believe that the trial court's decision was based upon its determination of the credibility of the officer

and upon the specific facts of this case. The trial court did not credit all of the officer's testimony.

In *Reis v. Commissioner of Public Safety*, 358 N.W.2d 740 (Minn.Ct.App.1984), the Commissioner challenged a trial court determination that a deputy lacked probable cause in a somewhat similar fact situation. The deputy testified that the driver was alert, coherent and cooperative, even though the deputy did detect a moderate odor of alcohol and somewhat bloodshot eyes; his slurred speech was discounted by the deputy because the driver had a swollen lip from his accident. The driver admitted he had been drinking earlier in the evening, and had not been watching the road, with which he was familiar. The trial court, examining the totality of the circumstances, concluded the deputy lacked sufficient probable cause to invoke the implied consent law. This court affirmed, concluding again that in a close case, we should defer to the trial court. *Id.* at 741.

The trial court determined that there was insufficient probable cause, and that the arrest was based more on respondent's past behavior, the prior DWIs, than upon the specific facts present at the time of arrest. This case presents a close issue, and we will defer here to the trial court's evaluation of the testimony. We emphasize, however, that this case does not stand for the proposition that field sobriety tests must be given, or that preliminary breath screening tests must be given, but rather that each case must be determined upon its own facts.

The problem presented here could have been more easily resolved, or even avoided, if the officer had used these readily available tests. This is particularly so where the officer did not observe any erratic driving in following respondent for a number of blocks.

### DECISION

The trial court order rescinding the revocation is affirmed.

Affirmed.