**Willard Carl HOLM, Petitioner, Respondent,**

v.

**COMMISSIONER OF PUBLIC SAFETY, Appellant.**

**No. C5–87–1491.**

Court of Appeals of Minnesota.

Dec. 15, 1987.

Patrick J. Costello, Red Wing, for petitioner, respondent.

Hubert H. Humphrey, III, Atty. Gen., Joel A. Watne, Sp. Asst. Atty. Gen., St. Paul, for appellant.

Heard, considered and decided by HUSPENI, P.J., and SEDGWICK and LOMMEN,* JJ.

* Acting as judge of the court of appeals by appointment pursuant to Minn. Const. art. 6, § 1.

## OPINION

SEDGWICK, Judge.

Willard Carl Holm's driver's license was revoked when he refused to submit to chemical testing. The trial court rescinded the revocation, based on an invalid stop and a lack of probable cause to believe respondent was driving while under the influence. The Commissioner of Public Safety appeals. We reverse.

## FACTS

On April 2, 1987, at 10:38 p.m., Officer Charles Hart saw respondent's vehicle make a right turn in the city of Red Wing. Respondent had his bright lights on, and did not dim them for oncoming traffic. Hart followed respondent and saw him drift toward the right side of the roadway where vehicles normally park. He said that had cars been parked in that lane, respondent would have struck them. There was no other unusual driving behavior. The officer activated his red lights, and stopped respondent.

Hart asked respondent for his driver's license. He smelled alcohol, and testified that respondent's speech was slurred and his eyes were bloodshot and watery. Hart asked respondent to get out of the vehicle; he refused the first request but after the second request did so reluctantly. Respondent staggered when he left the vehicle and used his left hand on the car. He walked very slowly from the rear of the car to the sidewalk.

Hart asked respondent to perform field sobriety tests. Respondent refused to perform the heel-to-toe test, saying he had a bad back. Hart asked him if he knew the alphabet; respondent replied that he had only a sixth grade education and did not know the alphabet. Hart asked if respondent could or would count, and respondent said he could count as well as the officer. Hart asked him to count from 99 to 80 and he refused. He then asked respondent to do a balance test; respondent refused again, for no reason.

Hart, who testified that he has dealt with people in varying stages of intoxication over the years, formed the opinion that respondent was intoxicated. He described respondent as not "falling down drunk" but intoxicated enough so that his movements were all deliberate and selective. He based his opinion on respondent's deliberate and slow movement, the odor of alcohol, bloodshot, watery eyes, and slurred speech. Hart placed him under arrest for DWI and put him in the squad car.

Officer Thomas Kohrs, a passenger in Hart's squad car, also testified that respondent had his bright lights on, that he saw respondent's vehicle go to the right, and then come back to his lane. He estimated that half of the width of respondent's car was in the parking lane at times.

After the officers stopped respondent, they ascertained that his high and low beams were in working order.

## ISSUES

1. Did the trial court err in concluding that there was no reasonable basis for the stop?

2. Did the trial court err in determining that probable cause did not exist?

## ANALYSIS

1. The officers' stop of a moving vehicle is lawful if they can articulate that a "particularized and objective basis for suspecting the particular persons stopped of criminal activity." *United States v. Cortez*, 449 U.S. 411, 417–18, 101 S.Ct. 690, 694–95, 66 L.Ed.2d 621 (1981), *quoted in State v. Combs*, 398 N.W.2d 563, 565 (Minn.1987). The officers may make their assessment on the basis of all the circumstances, and may draw inferences and make deductions which might elude an untrained person. *Cortez*, 449 U.S. at 417–18, 101 S.Ct. at 694–95; *Combs*, 398 N.W.2d at 565. All that is required is that the stop not be the product of "mere whim, caprice, or idle curiosity." *People v. Ingle*, 36 N.Y.2d 413, 420, 369 N.Y.S.2d 67, 74, 330 N.E.2d 39, 44 (1975), *quoted in Marben v. State*, 294 N.W.2d 697, 699 (Minn.1980).

Although the trial court did not clearly state that the stop was unlawful, that fact

can fairly be inferred from its conclusions of law.

Although both officers testified respondent was driving with his high beams on, and the trial court found respondent to have been driving with his high beams on, the conclusion of law stated that "no citation issued that involved the alleged improper use of high beam headlights."

The trial court apparently did not consider the testimony that the car weaved to the right because it was not in the police officer's report.

■ The facts relied upon by the trial court are sufficient to make a stop. A driver must dim his lights when approaching a vehicle and failure to do so is a violation of Minn.Stat. § 169.61 (1986). Such a violation is a misdemeanor. Minn. Stat. § 169.47 (1986). The officers were justified in stopping the vehicle for failure to dim its lights when oncoming traffic was approaching.

The trial court discounted the statutory violation because no citation was issued; however, the failure to issue a citation is not determinative of the validity of the stop. *State v. Clark*, 394 N.W.2d 570, 572 (Minn.Ct.App.1986); *Frank v. Commissioner of Public Safety*, 384 N.W.2d 574, 576 (Minn.Ct.App.1986).

2. The trial court found that no probable cause existed to believe respondent was driving while under the influence. Probable cause exists when facts and circumstances are known to the officer that would warrant a prudent person in the officer's position to conclude the person was violating the DWI statute. *State v. Harris*, 295 Minn. 38, 42, 202 N.W.2d 878, 881 (1972). In *State v. Olson*, 342 N.W.2d 638 (Minn. Ct.App.1984), this court noted that each case must be decided on its own facts, and in reviewing an officer's probable cause determination "great deference" should be paid by the reviewing court. *Id.* at 640–41. The reviewing court must ensure that the officer had a substantial basis for concluding that probable cause existed at the time the implied consent law was invoked. *Id.* at 641.

In evaluating probable cause, each case must be decided on its own facts and circumstances. *Olson*, 342 N.W.2d at 640. There are numerous signs which may indicate a person is under the influence, but all signs need not be present to form the opinion that a driver is under the influence. *Martin v. Commissioner of Public Safety*, 353 N.W.2d 202, 204 (Minn.Ct.App.1984).

The trial court here found that "there was no evidence submitted as to any field sobriety tests observed by the officers prior to petitioner being placed under arrest for driving under the influence." The trial court concluded that the absence of field sobriety tests "and a total absence of driving behavior that would substantiate a finding of probable cause that petitioner was driving under the influence" was the basis for rescission of respondent's driver's license revocation.

■ It was error for the trial court to predicate the finding of no probable cause on lack of evidence of the field sobriety tests when the respondent refused to perform them. While field sobriety tests are encouraged and may aid the police officer in making a probable cause determination, they are not required. *See Commissioner of Public Safety v. Shewchuk*, 412 N.W.2d 434, 436 (Minn.Ct.App.1987); *Holtz v. Commissioner of Public Safety*, 340 N.W.2d 363, 365 (Minn.Ct.App.1983).

The trial court's finding that Officer Hart "smelled alcohol on petitioner's breath, and observed that petitioner's eyes were bloodshot and watery," together with the uncontradicted evidence concerning petitioner's actions and statements warrants the conclusion that the police officers had probable cause to believe that respondent was driving under the influence of alcohol.

## DECISION

The decision of the trial court rescinding the revocation of respondent's driver's license is reversed.

Reversed.