STATE of Minnesota, Respondent,

v.

Joshua Lee BEARDEMPHL, Appellant.

No. A03–449.

Court of Appeals of Minnesota.

Feb. 10, 2004.

Mike Hatch, Attorney General, St. Paul, MN, and Amy Klobuchar, Hennepin County Attorney, Linda K. Jenny, Assistant Hennepin County Attorney, Minneapolis, MN, for respondent.

John M. Stuart, State Public Defender, Theodora Gaïtas, Assistant State Public Defender, Minneapolis, MN, for appellant.

Considered and decided by GORDON SHUMAKER, Presiding Judge, RANDALL, Judge, and ROBERT H. SCHUMACHER, Judge.

## OPINION

RANDALL, Judge.

After a court trial on stipulated facts, appellant was convicted of felon in possession of a firearm and of two counts of second-degree assault. He challenges the denial of his motion to suppress, arguing that his seizure was illegal and that evidence from that seizure should have been suppressed. We affirm.

## FACTS

On September 19, 2002, at about 6:45 p.m., Officer Jeffrey Boeltl was on routine patrol with his partner, Officer Andrew Enriquez, in a marked squad car. Boeltl noticed a car with a loud muffler and a back end that was bouncing up and down, which he deemed a safety hazard. Boeltl decided to stop the vehicle, and he activated the emergency lights on his squad car. Appellant, the driver of the suspect vehicle, made a right turn into a parking lot of a water park. By the time that Boeltl, who had to wait for several pedestrians to pass by, entered the parking lot, appellant had left his vehicle and was running away through a grassy area in the park.

The officers pursued appellant in the squad car with the lights and siren activated. Boeltl saw appellant reach towards his waistband, throw something on the ground, and then reach back again to his waistband. Boeltl warned his partner and then saw something silver and black in appellant's hand. Enriquez advised Boeltl that it appeared to be a gun.

The officers continued their pursuit on foot as appellant left the park and ran into an alley. Appellant jumped over a fence and then turned and pointed a gun at the officers. Enriquez fired his gun towards appellant and, in response, appellant began running again. After chasing him further, the officers apprehended him.

Appellant was arrested and charged with felon in possession of a firearm, Minn. Stat. § 624.713, subd. 1(b) (2002), and with two counts of assault in the second degree, Minn.Stat. § 609.222, subd. 1 (2002). The officers did not issue a citation to him for the equipment violations.

Appellant moved to suppress the evidence, arguing that his seizure was illegal. The district court denied the motion. Appellant waived his right to a jury trial and submitted the case to the court on stipulated facts. The court found him guilty as charged. This appeal followed.

## ISSUE

When the officers stopped appellant's vehicle upon reasonable suspicion of petty misdemeanor equipment violations and appellant then fled from the officers on foot, did the officers who were pursuing him in a squad car with lights and siren activated have reasonable suspicion to seize him?

## ANALYSIS

In reviewing a district court order addressing a motion to suppress based on the legality of a search or seizure in a criminal

proceeding, an appellate court will not reverse findings of fact unless clearly erroneous. *State v. Pederson–Maxwell,* 619 N.W.2d 777, 780 (Minn.App.2000). The appellate court will review undisputed facts independently to determine whether the district court erred as a matter of law. *State v. Harris,* 590 N.W.2d 90, 98 (Minn. 1999).

A seizure occurs when, "under all the circumstances, a reasonable person would have believed that because of the conduct of the police he was not free to leave." *In re Welfare of E.D.J.,* 502 N.W.2d 779, 783 (Minn.1993) (holding that seizure occurred once police directed defendant, who started walking away after seeing the police officers, to stop). "[T]he police must be able to articulate reasonable suspicion justifying the seizure, else any evidence that is the fruit of the seizure is suppressible." *Id.* This requires only that the stop was "not the product of mere whim, caprice, or idle curiosity." *State v. Waddell,* 655 N.W.2d 803, 809 (Minn.2003) (quotation omitted). Appellant was seized.

The grounds for the officers' initial stop of appellant were a loud muffler and the apparent unsafe condition of the vehicle. "Ordinarily, if an officer observes a violation of a traffic law, however insignificant, the officer has an objective basis for stopping the vehicle." *State v. George,* 557 N.W.2d 575, 578 (Minn.1997). Under Minnesota law, every vehicle must be equipped "with a muffler in good working order which blends the exhaust noise into the overall vehicle noise." Minn.Stat. § 169.69 (2002). Further, it is unlawful to drive a vehicle "which is in such unsafe condition as to endanger any person." Minn.Stat. § 169.47, subd. 1(a) (2002). Violations of these statutes are petty misde-

meanors (not technically "crimes," but it is accepted that "reasonable and articulable suspicion" of traffic violations, whether petty misdemeanors or misdemeanors, can justify a stop). Minn.Stat. § 169.89, subd. 1 (2002). As the district court held, the initial stop of appellant's vehicle based on the equipment violations was lawful. *See State v. Pierce,* 347 N.W.2d 829, 833 (Minn. App.1984) (holding that stop based on noisy muffler was lawful). Appellant argues that he never received a citation for equipment violations. But "failure to issue a citation is not determinative of the validity of the stop." *Holm v. Comm'r of Pub. Safety,* 416 N.W.2d 473, 475 (Minn.App. 1987).

Appellant contends that the officers did not have reasonable suspicion to pursue him when he left his vehicle and fled after the stop. That argument of appellant is meritless. Appellant first argues that under the rules of criminal procedure, the officers could not lawfully make a custodial arrest for the equipment violations, because those offenses are only petty misdemeanors. Minn. R.Crim. P. 6.01, subd. 1(1)(a). That rule provides that a custodial arrest is authorized for misdemeanors under limited circumstances and " . . . [o]rdinarily, for misdemeanors not punishable by incarceration, a citation shall be issued."[1] *Id.* Appellant's argument is not on point. The officers were not making a custodial arrest for a loud muffler and unsafe equipment. They were pursuing him after he fled following a valid traffic stop.

Appellant asserts that a stop for equipment violations plus fleeing from an officer together do not give rise to a reasonable, articulable suspicion that he was engaged

---

**1.** "[N]ot punishable by incarceration" designates a petty misdemeanor for which jail time is never authorized, as opposed to a misde-

meanor for which jail time, although not necessarily the norm, is always authorized and therefore always possible.

in any criminal activity other than equipment violations. We disagree. If a defendant is stopped for equipment violations and has done absolutely nothing wrong other than those possible equipment violations, that defendant cannot give a "reasonable and articulable explanation" for running away from the police on the basis that "I just decided the right thing for me to do was run from the cops rather than stay and discuss whether I needed a new muffler!"

Here, appellant, rather than stopping his vehicle and staying on the scene to discuss with the officers the reason for the stop (and possibly receive a citation), abandoned his vehicle and fled. At this point, as the district court found, the police had reasonable and articulable suspicion that additional criminal activity—at the very least, disobeying a lawful police order to stop and obstructing legal process—was "afoot." Then, appellant "removed all doubt" as to whether he could be pursued and apprehended when, while fleeing, he took out a gun that both officers saw and pointed it at them. It is not difficult to find that officers had reasonable suspicion to seize appellant who, while fleeing from the police after a valid stop, pulled out a gun and pointed it at the officers.

Appellant, somehow, argues that the evidence seized after the police pursuit should be suppressed as fruit of the poisonous tree. He cites caselaw in which the original seizure was illegal, the defendant fled, and, as a result of a second encounter, police found contraband, which was suppressed as being an illegal search or seizure. *State v. Hardy,* 577 N.W.2d 212, 217 (Minn.1998). *Hardy* is not on point. Appellant's argument is premised on the assumption that the officers' actions in pursuing him as he fled were *illegal.* Unlike *Hardy,* the first seizure of appellant was lawful.

## DECISION

The police officers had reasonable suspicion to seize appellant. The district court did not err in denying appellants motion to suppress evidence resulting from the seizure.

**Affirmed.**