*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1141**

Antone William Guimont, petitioner,
Appellant,

vs.

Commissioner of Public Safety,
Respondent.

**Filed April 6, 2015
Affirmed
Reyes, Judge**

Mille Lacs County District Court
File No. 48-CV-13-867

Lee R. Wolfgram, The Wolfgram Law Firm, Ltd, Minneapolis, Minnesota (for appellant)

Lori Swanson, Attorney General, Jeffrey S. Bilcik, Assistant Attorney General, St. Paul, Minnesota (for respondent)

Considered and decided by Bjorkman, Presiding Judge; Hudson, Judge; and Reyes, Judge.

## U N P U B L I S H E D   O P I N I O N

**REYES**, Judge

Appellant challenges the district court's order sustaining the revocation of his driver's license. He argues that (1) Minnesota's implied-consent law is unconstitutional because it violates the unconstitutional-conditions doctrine and his due process rights; (2) the officer did not possess probable cause to believe that he was driving, operating, or

in physical control of a motor vehicle; and (3) his limited right to counsel was not vindicated. We affirm.

## FACTS

At approximately 1:00 a.m. on May 5, 2013, Princeton Police Officer Alex Dehn received a complaint that a vehicle traveling eastbound on Highway 95 was driving erratically. The complainant described the vehicle as a white, crew-cab Chevrolet truck and informed dispatch that the vehicle had turned north on Rum River Drive. A few minutes later, Officer Dehn located a vehicle matching that description parked in a residential driveway approximately two blocks from the last location provided by the complainant. The vehicle was not running, but its headlights and taillights were lit.

Officer Dehn approached the vehicle and located appellant sitting in the driver's seat. He did not observe the keys in the ignition or in appellant's possession. Appellant told the officer that he had not been driving on Highway 95, but admitted that he had just returned home from the VFW, where he had consumed "five, six, or seven beers," including one approximately 20 minutes before the officer approached him. Appellant told the officer that based on the amount of alcohol that he had consumed, he was "not going to blow legal." The officer also testified that appellant exhibited several other signs of alcohol intoxication, including slurred speech, watery eyes, and an odor of alcohol.

Officer Dehn arrested appellant after he refused to perform field sobriety tests or submit to a preliminary breath test and transported him to the Princeton Police Department. There, the officer read appellant the Minnesota Implied Consent Advisory

and asked appellant if he wished to speak with an attorney. Appellant answered in the affirmative and attempted to locate a business card for his lawyer. After appellant was unable to locate the business card, the officer asked if he wished to use the phone book to contact an attorney. Appellant declined.

Officer Dehn then asked appellant if he would consent to a blood or urine test. Appellant initially indicated that he would not, but subsequently told the officer that he would take the blood test "if [the officer] wanted him to." The officer told appellant that it was appellant's decision whether he would submit to testing and asked appellant again if he would take either test. Appellant refused, telling the officer that he would not submit to testing because the officer did not stop him on a public street. Officer Dehn did not attempt to obtain a warrant authorizing the seizure of appellant's blood or urine.

Appellant's driving privileges were revoked, and he filed a petition to rescind the revocation. At the implied-consent hearing, appellant testified that he consumed multiple drinks over a several-hour period at the VFW. He stated that, after he drove home, he went inside, retrieved a beer, and returned to his vehicle to smoke a cigarette. Appellant estimated that he had been home for approximately fifteen minutes before he encountered the officer. He also testified that he did not have his keys when he returned to the vehicle. The district court found that appellant's testimony was not credible and sustained the revocation of his driver's license. This appeal follows.

**D E C I S I O N**

**I.**

Appellant argues that Minnesota's implied-consent statute is unconstitutional because it violates both the unconstitutional conditions doctrine and his substantive due-process rights. The constitutionality of a statute is a question of law, which we review de novo. *State v. Ness*, 834 N.W.2d 177, 181 (Minn. 2013). We presume that Minnesota statutes are constitutional and will declare a statute unconstitutional "with extreme caution and only when absolutely necessary." *Id.* at 182 (quotation omitted). The party challenging a statute on constitutional grounds must meet "the very heavy burden of demonstrating beyond a reasonable doubt that the statute is unconstitutional." *State v. Johnson*, 813 N.W.2d 1, 11 (Minn. 2012) (quotation omitted).

Minnesota's implied-consent statute states that any person "who drives, operates, or is in physical control of a motor vehicle within this state or on any boundary water of this state consents . . . to a chemical test of that person's blood, breath, or urine for the purpose of determining the presence of alcohol." Minn. Stat. § 169A.51, subd. 1(a) (2014). A law-enforcement officer may impose this duty on a person if the officer has probable cause to believe that the person has committed the offense of driving while intoxicated (DWI) and if the officer has arrested that person for DWI. Minn. Stat. § 169A.51, subd. 1(b) (2014). If a person refuses to submit to chemical testing, "a test must not be given." Minn. Stat. § 169A.52, subd. 1 (2014). But the commissioner of public safety may revoke a person's driver's license for refusal to submit to testing. Minn. Stat. § 169A.52, subd. 3 (2014).

4

Appellant contends that Minnesota's implied-consent statute violates the unconstitutional-conditions doctrine because the statute conditions his driving privileges on the waiver of his right to be free from unreasonable searches and seizures. "The unconstitutional-conditions doctrine is a creature of federal law that may, in some situations, be invoked to protect or vindicate a constitutional right." *Stevens v. Comm'r of Pub. Safety*, 850 N.W.2d 717, 723 (Minn. App. 2014) (citing *Frost v. Railroad Comm'n of Cal.*, 271 U.S. 583, 592–93, 46 S. Ct. 605, 607 (1926)). Essentially, "the unconstitutional conditions doctrine reflects a limit on the state's ability to coerce waiver of a constitutional right where the state may not impose on that right directly." *State v. Netland*, 762 N.W.2d 202, 211 (Minn. 2009), *abrogated in part by Missouri v. McNeely*, 133 S. Ct. 1552 (2013), *as recognized in State v. Brooks*, 838 N.W.2d 563, 567 (Minn. 2013, *cert. denied*, 134 S. Ct. 1799 (2014).

We have previously concluded that the implied-consent statute does not violate the unconstitutional conditions doctrine by authorizing the commissioner of public safety to revoke the driver's license of a person who has been arrested for DWI and has refused to submit to chemical testing. *See Stevens*, 850 N.W.2d at 720. We based our conclusion on several factors, including the fact that: (1) the unconstitutional-conditions doctrine has not been applied to the Fourth Amendment; (2) the implied-consent statute does not authorize a search inconsistent with the Fourth Amendment because the statute requires the driver to expressly consent to testing before a test is given; (3) any search authorized by the implied-consent statute does not violate the Fourth Amendment because the statute is a reasonable method of promoting the state's interest in enforcing its DWI laws; and

5

(4) the implied-consent statute does not coerce a driver into surrendering his or her Fourth Amendment rights. *Id*. at 723-31. Appellant does not identify any reason why that rationale does not apply here. He therefore fails to meet his burden to demonstrate that the implied-consent statute violates the unconstitutional-conditions doctrine.

Appellant also argues that the implied consent statute is unconstitutional because it violates substantive due-process guarantees. "[S]ubstantive due process protects individuals from certain arbitrary, wrongful government actions regardless of the fairness of the procedures used to implement them." *In re Linehan*, 594 N.W.2d 867, 872 (Minn. 1999) (quotations omitted). "[T]he Due Process Clause specially protects those fundamental rights and liberties which are, objectively, deeply rooted in this Nation's history and tradition . . . and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed." *Washington v. Glucksberg*, 521 U.S. 702, 720-21, 117 S. Ct. 2258, 2268 (1997) (quotations and citations omitted). Appellate courts will strictly scrutinize a challenged law that implicates a fundamental right. *Essling v. Markman*, 335 N.W.2d 237, 239 (Minn. 1983). But when the right implicated is not fundamental, this court looks only to whether the law is rationally related to the achievement of a legitimate governmental purpose. *Id*.

Appellant asserts that Minnesota's implied-consent statute is subject to strict scrutiny because it implicates his fundamental right to refuse a "constitutionally unreasonable search." But we have previously concluded that the implied-consent statute does not authorize a search and that if it did, the search authorized would be constitutional because the statute satisfies the general reasonableness requirement of the

6

Fourth Amendment. *See Stevens*, 850 N.W.2d at 725-31. Moreover, appellant does not identify, and we are unable to locate, any case that holds a person suspected of drunk driving possesses the fundamental right to refuse alcohol testing. The United States Supreme Court has previously stated that the right to refuse alcohol testing is not embedded in the Constitution, but is "simply a matter of grace bestowed by the [legislature]." *South Dakota v. Neville*, 459 U.S. 553, 565, 103 S. Ct. 916, 923 (1983). Because appellant does not establish that the implied-consent statute implicates a fundamental right, we review only whether the statute is rationally related to the achievement of a legitimate government purpose. There is no dispute that the state possesses a strong interest in protecting the safety of its roads or that the suspension of driver's licenses for those who refuse testing after being arrested for DWI is a rational means of protecting that interest. *See Stevens*, 850 N.W.2d at 726-31. We therefore conclude that the implied-consent statute does not violate appellant's substantive due-process rights.[1]

## II.

Appellant also argues that the district court erred by concluding that the officer possessed probable cause to believe that appellant drove, operated, or was in physical

---

[1] The Minnesota Supreme Court has recently held that a person's substantive due-process rights are not violated when the officer asks the person to submit to a breath test because that test would have been constitutional under the search-incident-to-arrest exception to the warrant requirement. *State v. Bernard*, ___, N.W.2d. ___, ___ 2015 WL 543160, *8– *9 (Minn. Feb. 11, 2015). But the court expressly declined to consider whether a blood or urine test would be constitutional under the same exception, noting that blood tests are much more invasive than breath tests. *Id*. at *4 n.6; *see also Skinner v. Ry Labor Execs. Ass'n*, 489 U.S. 602, 626, 109 S. Ct. 1402, 1418 (1989) (stating that urine tests raise privacy concerns not implicated by blood or breath tests).

control of the vehicle.  The commissioner of public safety may revoke a person's driver's license when an officer has certified that probable cause existed to believe that the person had been driving, operating, or in physical control of a vehicle while under the influence of alcohol, and that the person refused to submit to testing.  Minn. Stat. § 169A.52, subd. 3.  Because the revocation is "based on the refusal to act on the lawful request of a peace officer," the subsequent judicial review of the revocation is limited to whether the officer possessed probable cause to believe that the person drove or was in physical control of the motor vehicle.  *Flamang v. Comm'r of Pub. Safety*, 516 N.W.2d 577, 580 (Minn. App. 1994), *review denied* (Minn. July 27, 1994).

Probable cause exists when, "based on the totality of the circumstances, there is a reasonable ground of suspicion supported by circumstances sufficiently strong in themselves to warrant a cautious man in believing" that the person drove or exercised physical control of the vehicle.  *Shane v. Comm'r of Pub. Safety*, 587 N.W.2d 639, 641 (Minn. 1998) (quotation omitted).  "A determination of probable cause is a mixed question of fact and of law."  *Groe v. Comm'r of Pub. Safety*, 615 N.W.2d 837, 840 (Minn. App. 2000), *review denied* (Minn. Sept. 13, 2000).  The district court's factual findings will not be disturbed unless clearly erroneous.  *Lynch v. Comm'r of Pub. Safety*, 498 N.W.2d 37, 39 (Minn. App. 1993).  But when the facts of a case are not in dispute, probable cause is a question of law that we review de novo.  *Shane*, 587 N.W.2d at 641.  Whether probable cause exists is an objective inquiry that must be evaluated from the point of view of a "prudent and cautious police officer on the scene at the time of the

8

arrest." *Johnson v. Comm'r of Pub. Safety*, 366 N.W.2d 347, 350 (Minn. App. 1985) (quotation omitted).

Here, the complainant reported that a white Chevrolet crew-cab truck was driving erratically. The officer located a vehicle matching that description a few minutes later a short distance from where the complainant last reported observing it. The vehicle's taillights and headlights were lit and appellant was seated in the driver's seat. Appellant admitted to the officer that he had just driven home from the VFW and that he had consumed a considerable amount of alcohol that night, and the officer observed several indicia of intoxication. We conclude that, under these circumstances, the officer possessed probable cause to believe that appellant had driven the vehicle.

We also consider whether the evidence is sufficient to establish probable cause that appellant retained physical control over the vehicle. "The term 'physical control' is more comprehensive than either 'drive' or 'operate.'" *State v. Starfield*, 481 N.W.2d 834, 836 (Minn. 1992). The term encompasses situations where an intoxicated person is found in a parked vehicle that, "without too much difficulty, might again be started." *Flamang*, 516 N.W.2d at 581. A person's mere presence in or about the vehicle is not sufficient to establish physical control; rather the evidence must demonstrate that the person "has or is about to take some action that makes the motor vehicle a source of danger to themselves, to others, or to property." *Snyder v. Comm'r of Pub. Safety*, 744 N.W.2d 19, 23 (Minn. App. 2008) (quotation omitted). In this case, the fact that: (1) appellant remained in the driver's seat; (2) the vehicle's lights were on; and (3) he admitted that he had just finished driving the vehicle after drinking demonstrates

9

probable cause to believe that appellant had or could have taken some action to make the vehicle a source of danger to others. *See Dufrane v. Comm'r of Pub. Safety*, 353 N.W.2d 705, 708 (Minn. App. 1984) (stating that DuFrane's "upright presence in the front seat and behind the wheel of a car, plus the testimony of the police officer that appellant had told her he had been driving the car earlier, constitutes reasonable and probable grounds to believe [he] was in physical control of a motor vehicle"). We also conclude, therefore, that the officer possessed probable cause to believe that appellant retained physical control over the vehicle.

Appellant argues that the evidence establishes that he was in the vehicle for purposes other than driving or controlling it. He notes that the officer was unable to locate the keys for the vehicle, that the vehicle was parked in his home, and that he testified at the implied-consent hearing that he did not intend to drive the vehicle, but that he was there to retrieve his cigarettes. He maintains that because the evidence demonstrates no risk that he would "restart the vehicle in an intoxicated state," the officer did not possess probable cause to believe that he maintained physical control over the vehicle. *State, City of Falcon Heights v. Pazderski*, 352 N.W.2d 85, 88 (Minn. App. 1984). We are not persuaded, for several reasons.

The location of the keys is not dispositive to the issue of whether there is probable cause to conclude that a person drove or exercised physical control of the vehicle. *Ledin v. Comm'r of Pub. Safety*, 393 N.W.2d 433, 435 (Minn. App. 1986). Likewise, a person's intent to operate the vehicle is not essential to establishing whether that person exercised physical control over the vehicle. *Starfield*, 481 N.W.2d at 839. In addition,

appellant's testimony that he was at the car to retrieve his cigarettes conflicted with the statement that he made to the officer on the night that he was arrested. The district court found that appellant's testimony was not credible, and we defer to the district court's credibility determinations. *Conrady v. Comm'r of Pub. Safety*, 396 N.W.2d 914, 916 (Minn. App. 1986). And, in any event, our review of probable cause is based on the facts and circumstances known to the officer at the time of arrest. *See Holm v. Comm'r of Pub. Safety*, 416 N.W.2d 473, 475 (Minn. App. 1987). Here, because appellant did not inform the officer of the circumstances described in his testimony, the officer could not have considered those facts in assessing probable cause. The district court properly considered the totality of the circumstances known to the officer at the time of arrest. Because those circumstances support the district court's conclusion that probable cause existed, we affirm the district court's decision to sustain the revocation of appellant's driver's license.

## III.

Finally, for the first time on appeal, appellant argues that the district court's order sustaining the revocation of his license should be reversed because his right to counsel was not vindicated. To raise a license-revocation issue for judicial review, a petitioner must "state with specificity the grounds upon which the petitioner seeks rescission of the order of revocation." Minn. Stat. § 169A.53, subd. 2(b)(3) (2014). A district court does not err by failing to address an issue not raised in the petition for judicial review. *Rancour v. Comm'r of Pub. Safety*, 355 N.W.2d 462, 464 (Minn. App. 1984) At the implied-consent hearing, appellant informed the district court that he waived all issues

11

but his challenge to the constitutionality of the implied-consent statute, reasonable articulable suspicion for the stop, and probable cause for the test.  Because appellant did not argue the vindication of counsel issue to the district court, he has waived review of it on appeal.  *Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn. 1988).

     **Affirmed.**