*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0097**

Justin Steven Luedke,
petitioner,
Appellant,

vs.

Commissioner of Public Safety,
Respondent

**Filed July 13, 2015
Affirmed
Chutich, Judge**

Becker County District Court
File No. 03-CV-14-1574

Richard C. Kenly, Kenly Law Office, Backus, Minnesota (for appellant)

Lori Swanson, Attorney General, Rachel E. Bell, Assistant Attorney General, St. Paul, Minnesota (for respondent)

Considered and decided by Kirk, Presiding Judge; Chutich, Judge; and Rodenberg, Judge.

## UNPUBLISHED OPINION

**CHUTICH**, Judge

Appellant Justin Luedke challenges the revocation of his driver's license, arguing that the district court erred in sustaining the revocation because the police officer lacked an adequate basis for the stop and because the warrantless search of his breath was

impermissible. Because the police officer had reasonable suspicion for the stop and an exception to the warrant requirement justified the search, we affirm.

## FACTS

At approximately 4:00 a.m. on June 21, 2014, Becker County Sheriff's Deputy Adam Kumpula was dispatched to investigate a driving complaint. The complainant said that he had heard a loud truck tearing around the area the past two weekends at very early hours. At that time, water was over the road; the complainant believed that the driver was "mudding."

After leaving the complainant's residence, Deputy Kumpula saw fresh tracks and skid marks leading to a nearby driveway. A truck was parked in the driveway with its headlights out, but it was still running. The truck was parked approximately 30 feet into the driveway, but the house at the end of the driveway was not visible from either the road or the truck's location. Deputy Kumpula noticed that the truck was unusually loud and that its exhaust was making a loud "popping" noise. Deputy Kumpula activated his emergency lights and pulled in behind the truck.

As he approached, Deputy Kumpula noticed that the occupant, later identified as appellant Justin Luedke, was sleeping in the driver's seat of the still-running truck. After trying unsuccessfully several times to wake Luedke, Deputy Kumpula reached in through the open window and nudged Luedke awake. Upon waking, Luedke looked around and appeared confused. When Deputy Kumpula asked Luedke whose driveway he was parked in, Luedke thought for a while and said that he had forgotten; he eventually remembered that it was his parents' driveway.

Deputy Kumpula immediately noticed several indicia of intoxication. Luedke had watery, bloodshot eyes and slow, slurred speech. When asked what he was doing, Luedke said that he was just hanging out by himself. Luedke then put his arm on the gearshift as if he were going to put the truck in gear; Deputy Kumpula told him to shut off the truck. When Luedke turned the truck off, Deputy Kumpula noticed an odor of alcohol. When asked by Deputy Kumpula for his driver's license, Luedke responded that he did not have it with him. He denied that the skid marks on the road were from him. Luedke said that he had three drinks earlier at his parents' house.

Deputy Kumpula had Luedke step out of the truck for field sobriety tests, all of which he failed. After Luedke admitted that he actually had five drinks that night, Deputy Kumpula arrested him for driving while impaired and took him to the Becker County Jail.

After reading the applicable portions of the implied-consent advisory, Deputy Kumpula asked Luedke if he understood; Luedke said that he did. Deputy Kumpula asked if Luedke wanted to contact an attorney; Luedke said that he did not. Deputy Kumpula asked Luedke if he would take a breath test; Luedke said that he would, and the breath test revealed an alcohol concentration of .16. Luedke's driver's license was then revoked.

In July 2014, Luedke petitioned the district court to rescind his license revocation, challenging the basis for the stop and the validity of his consent. After a hearing, the district court sustained the license revocation. It concluded that Deputy Kumpula was justified in stopping Luedke based on the excessive noise from the truck's muffler. It

3

further concluded that Deputy Kumpula was justified in stopping Luedke based on the information received from the complainant, the fresh tracks leading into the driveway, and the idling truck. The district court additionally concluded that Luedke validly consented to the breath test. Luedke appealed.

## D E C I S I O N

### I. The Stop

Luedke first argues that law enforcement illegally seized him. The commissioner counters, and we agree, that the totality of the circumstances demonstrates that reasonable suspicion supported the stop.

We review a district court's determination regarding the legality of an investigatory traffic stop and reasonable suspicion de novo. *Wilkes v. Comm'r of Pub. Safety*, 777 N.W.2d 239, 242-43 (Minn. App. 2010). We review findings of fact for clear error, and due weight is given to the inferences that the district court draws from those facts. *State v. Britton*, 604 N.W.2d 84, 87 (Minn. 2000). We also defer to a district court's credibility determinations. *State v. Dickerson*, 481 N.W.2d 840, 843 (Minn. 1992), *aff'd*, *Minnesota v. Dickerson*, 508 U.S. 366, 113 S. Ct. 2130 (1993). A finding of fact is clearly erroneous only when we are left with the "definite and firm conviction that a mistake has been committed." *Jasper v. Comm'r of Pub. Safety*, 642 N.W.2d 435, 440 (Minn. 2002) (quotation omitted).

An officer may conduct an investigatory stop if the officer has reasonable, articulable suspicion of criminal activity. *State v. Timberlake*, 744 N.W.2d 390, 393 (Minn. 2008). Although the requisite showing for reasonable suspicion is not high, it

4

requires more than a mere hunch. *State v. Davis*, 732 N.W.2d 173, 182 (Minn. 2007). Reasonable, articulable suspicion is judged by the totality of the circumstances. *Id.* The violation of a traffic law, however insignificant, provides an officer with an objective basis for stopping the vehicle. *State v. George*, 557 N.W.2d 575, 578 (Minn. 1997).

Minnesota law requires that all vehicles "be equipped with a muffler in good working order . . . to prevent excessive or unusual noise." Minn. Stat. § 169.69 (2014). A faulty muffler provides an officer with a valid reason for conducting a stop. *State v. Beardemphl*, 674 N.W.2d 430, 432 (Minn. App. 2004); *State v. Pierce*, 347 N.W.2d 829 833 (Minn. App. 1984).

Here, Deputy Kumpula noticed that Luedke's truck was unusually loud and that its exhaust was making a loud "popping" sound. Because Minnesota law prohibits exhaust systems that make "excessive or unusual noise," this basis alone supported the stop. *See* Minn. Stat. § 169.69; *Beardemphl*, 674 N.W.2d at 432.

Minnesota law also prohibits driving a truck "upon any street or highway carelessly or heedlessly . . . in a manner that endangers or is likely to endanger any property or any person, including the driver or passengers of the vehicle." Minn. Stat. § 169.13, subd. 2 (2014).

Deputy Kumpula possessed reasonable, articulable suspicion to stop Luedke on this basis as well. The reasonable suspicion standard can be met based on information provided by a reliable informant. *Timberlake*, 744 N.W.2d at 393. Tips provided by private citizens are presumed reliable, *Marben v. State, Dept. of Pub. Safety*, 294 N.W.2d

5

697, 699 (Minn. 1980), especially when informants provide information about their identity so that law enforcement can locate them if necessary, *Davis*, 732 N.W.2d at 183.

Here, the private citizen provided his name and address to law enforcement and told Deputy Kumpula about hearing a loud truck tearing around the area. He told Deputy Kumpula that this truck had been doing so the previous two weekends as well. Shortly after speaking with the citizen, Deputy Kumpula observed skid marks and tracks on the road leading to a driveway where Luedke was parked in his still-running truck. Deputy Kumpula also noticed that the truck was very loud, which was the reason behind the citizen's 911 call. The totality of the circumstances—the citizen's report, coupled with Deputy Kumpula's own observations—provided the deputy with reasonable suspicion to stop Luedke for driving recklessly in violation of Minnesota law.

Luedke claims that the district court's finding that the tracks on the road led into the driveway where Deputy Kumpula found Luedke was clearly erroneous. But the district court credited Deputy Kumpula's testimony on this point, and we defer to that credibility determination. *See Dickerson*, 481 N.W.2d at 843.

Luedke asserts that the stop cannot be justified given the unknown distance between the citizen's residence and his parents' driveway and because he was not on a public roadway. Although the distance between the locations is unknown, the timeframe between the citizen's report and the sighting of Luedke's truck was not long. And given the time of day—just before 4:00 a.m.—the rural nature of the area, and the tracks leading from the road to the driveway, it was reasonable for Deputy Kumpula to believe that Luedke's loud truck was the same truck that the citizen had just complained of

6

loudly tearing around on public roads. Deputy Kumpula would have been equally justified in conducting a welfare check on Luedke, given his curious choice of napping circumstances.

Luedke also suggests that he was de facto under arrest immediately after Deputy Kumpula arrived at the scene. But police questioning during an investigative stop or even requiring field sobriety tests does not necessarily convert an investigatory stop into a custodial detention. *See State v. Herem*, 384 N.W.2d 880, 883 (Minn. 1986); *State v. Mellett*, 642 N.W.2d 779, 788 (Minn. App. 2002), *review denied* (Minn. July 16, 2002). This argument fails.

Because the totality of the circumstances demonstrates that reasonable, articulable suspicion existed to stop Luedke, the district court did not err by concluding that the stop was justified.

## II. The Breath Test

Luedke further challenges the warrantless search of his breath, arguing that no exception to the warrant requirement applies. We disagree.

The United States and Minnesota Constitutions protect persons against unreasonable searches. U.S. Const. amend. IV; Minn. Const. art. I, § 10. Unless an exception to the warrant requirement applies, a warrantless search is presumptively unreasonable. *State v. Diede*, 795 N.W.2d 836, 846 (Minn. 2011). Consent is an exception to the warrant requirement. *State v. Brooks*, 838 N.W.2d 563, 568 (Minn. 2013), *cert. denied*, 134 S. Ct. 1799 (2014). The voluntariness of consent is determined by considering the totality of the circumstances. *Id.* Whether consent was voluntary is a

question of fact reviewed under the "clearly erroneous" standard: findings of fact are clearly erroneous if we are left with the definite and firm conviction that a mistake occurred. *Diede*, 795 N.W.2d at 846-47.

Here, the district court's finding of voluntary consent was not clearly erroneous. Luedke was placed under arrest, read the implied-consent advisory, offered the opportunity to contact an attorney, and he then agreed to take the test. Deputy Kumpula did not use coercive language or a show of force; nor was the request for a test intimidating or persistent. Under these circumstances, a finding of voluntary consent was not clearly erroneous. *See Brooks*, 838 N.W.2d at 570-72.

A search-incident-to-lawful-arrest is another exception to the warrant requirement. *State v. Bernard*, 859 N.W.2d 762, 766 (Minn. 2015). As in *Bernard*, Deputy Kumpula had probable cause to arrest Luedke for driving while impaired, based on Luedke's watery and bloodshot eyes, slow and slurred speech, confusion, and several failed field sobriety tests. *See id.* at 772. Deputy Kumpula could then lawfully give Luedke a breath test under the search-incident-to-lawful-arrest exception. *See id.* at 767.

Luedke argues that *Bernard* should not apply because it was wrongly decided. We need not consider this contention because we cannot overrule supreme court precedent. *See Lake Superior Ctr. Auth. v. Hammel, Green & Abrahamson, Inc.*, 715 N.W.2d 458, 483 (Minn. App. 2006), *review denied* (Minn. Aug. 23, 2006).

**Affirmed.**